[Crim. No. 480. Second Appellate District.—May 27, 1918.]

In the Matter of the Application of FRED H. THOMPSON for Reinstatement as a Member of the Bar of the State of California.

ATTORNEY AT LAW—SUSPENSION FROM PRACTICE—RECORD OF FOREIGN COURT—PROCEDURE.—An attorney at law can be removed or suspended upon the record of a foreign court convicting him of a crime involving moral turpitude, without notice and without giving him an opportunity to be heard or to answer to the sufficiency of the record or to deny the allegations therein contained.

ID.—CRIMES DENOUNCED BY REVISED STATUTES OF UNITED STATES—WHEN CAUSE FOR DISBARMENT.—The crimes denounced by section 5470 of the Revised Statutes of the United States are within the terms of section 287 of the Code of Civil Procedure whenever they involve moral turpitude.

ID.—CONCEALMENT OF STOLEN CURRENCY — CRIME INVOLVING MORAL TURPITUDE.—The crime of receiving currency from one who has stolen it from the mails, and to conceal and aid in the concealment of it, is a crime involving moral turpitude.

ID.—APPLICATION FOR REINSTATEMENT TO PRACTICE—INSUFFICIENCY OF EVIDENCE.—An application by an attorney at law for reinstatement to practice upon the ground of reformation of character cannot be considered where the letters asking for such reinstatement are from attorneys residing out of the state and their signatures are not verified.

APPLICATION originally made to the District Court of Appeal for the Second Appellate District for reinstatement as a member of the Bar of the State of California.

The facts are stated in the opinion of the court.

Ingle Carpenter, for Petitioner.

James A. Gibson, Jr., for Respondent Los Angeles Bar Association.

WORKS, J., *pro tem.*—On January 6, 1911, the petitioner, together with another, was indicted by the United States grand jury for a violation of the terms of section 5470 of the Revised Statutes of the United States, [U. S. Comp. Stats. 1916, sec. 10,364; 5 Fed. Stats. Ann., 1st ed., p. 968], which

provides, in effect, that "Any person who shall buy, receive, or conceal, or aid in buying, receiving, or concealing" any of various documents, contracts, evidences of indebtedness, or articles, all of which are specifically mentioned in the statute, "knowing any such article or thing to have been stolen or embezzled from the mail, or out of any postoffice, branch postoffice or other authorized depository for mail matter, or from any person having custody thereof, shall be punishable by a fine of not more than two thousand dollars, and by imprisonment at hard labor for not more than five years." The indictment was in four counts. The first count charged that the petitioner and his associate "did willfully, knowingly, unlawfully and feloniously receive from one Orlando F. Altorre . . . and conceal and aid him . . . in concealing certain articles and things of value, to wit: divers notes of the national bank currency . . . and divers United States notes, treasury notes, legal tender notes, gold certificates and silver certificates, . . . in the whole amounting to and representing . . . the sum of . . . $5000, and of the value of . . . $5000, . . . which . . . had theretofore been willfully, knowingly, unlawfully and feloniously stolen, taken and carried away from the mails of the United States, in the Post Office . . . at the City of Los Angeles . . . by the said Orlando F. Altorre, . . . the said Fred H. Thompson . . . then and there . . . well knowing the same . . . to have been so willfully, knowingly, unlawfully and feloniously stolen, taken and carried away from the said mails of the United States, as aforesaid, and well knowing said 'articles' to be then and there articles and things of value feloniously stolen, taken and carried away from said mails of the United States, as aforesaid." The remaining three counts, although differently worded, were in effect the same as the first count, so far as any of the questions involved in the present proceeding are concerned, one of them being related to currency of the value of five thousand dollars, and the two others to currency of the value of ten thousand dollars. Upon a trial in the United States district court in and for the southern district of California, the petitioner was found guilty as charged in the indictment. On the first count he was sentenced to pay a fine of one thousand dollars and to be imprisoned in the United States penitentiary at McNeil Island, Washington, for a term of four years, at hard labor. The sentence was the same upon the third count, the

imprisonment under that count to commence at the conclusion of the term for which sentence was pronounced under the first count. The sentence was imposed on January 3, 1912. The petitioner prosecuted a writ of error to the United States circuit court of appeals, but the judgment was affirmed on February 3, 1913. (*Thompson* v. *United States*, 202 Fed. 401, [47 L. R. A. (N. S.) 206, 120 C. C. A. 575].)

On July 16, 1915, the Los Angeles Bar Association filed with the supreme court of the state an accusation against the petitioner, alleging his conviction of the crimes above mentioned. A certified copy of the record of conviction was filed with the accusation. On August 10, 1915, the supreme court made its order transferring to this court the proceeding instituted by the filing of the accusation and record of conviction, and, on August 12, 1915, this court, without notice to the petitioner, entered its order disbarring him and striking his name from the roll of attorneys. On November 9, 1916, the petitioner filed with this court his application for reinstatement as a member of the Bar upon the ground of a reformation of his character. The application was never insisted upon until February 15, 1918, when he filed a paper in the nature of a supplemental application for reinstatement, in which the position is also taken that the order of disbarment is void.

The order was made pursuant to the provisions of subdivision 1 of section 287 of the Code of Civil Procedure, to the effect that "an attorney and counselor may be removed or suspended" upon "his conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence." At the beginning of his brief the petitioner propounds the following question, as a basis for his argument: "Can an attorney at law, upon the record of a foreign court, without notice and without an opportunity to be heard or to answer to the sufficiency of the record or deny the allegations therein contained, be removed or suspended?" To the question thus broadly and generally stated an affirmative answer must be returned upon the authority of a case recently decided by this court, in which the record of conviction came from the same tribunal which passed sentence upon the petitioner (*In re Shepard*, 35 Cal. App. 492, [170 Pac. 442]); and the opinion in that case answers, as well, practically all the specific points now presented for our consideration by the petitioner in support of the gen-

eral question above stated. The questions which it does an-
swer will receive no mention in this opinion beyond the state-
ment just made.

Petitioner contends that "resort must be had to the laws
of the United States to determine the grade of the offense" of
which he was convicted. He insists that the Congress of the
United States has not provided, in its penal legislation, a divi-
sion of crimes into the two classes, felonies and misdemeanors,
a division which is general under the laws of the various
states. But the petitioner does not mean that, for according
to section 335 of the Federal Penal Code of 1910 (Act Cong.
March 4, 1909, c. 321, 35 Stat. 1152 [U. S. Comp. Stats. 1916,
sec. 10,509, 7 Fed. Stats. Ann., 2d ed., p. 987]), generally so-
called, "All offenses which may be punished by death, or im-
prisonment for a term exceeding one year, shall be deemed
felonies. All other offenses shall be deemed misdemeanors."
On March 4, 1909, and by the terms of the section quoted, the
Congress appears for the first time to have marshaled all
crimes against the laws of the United States under such an
arrangement. The section, along with the general provisions
of the code mentioned, went into effect on January 1, 1910.
The petitioner does not argue that section 335 of the Federal
Penal Code has no application in this proceeding, because of
its having taken effect after the commission of the petition-
er's offense; but he apparently assumes it, and the question at
once suggests itself. It is not, however, necessary to decide it
in this proceeding, and we may go forward as if the Congress
of the United States never had enacted such a measure.

Section 17 of our Penal Code is as follows: "A felony is a
crime which is punishable with death or by imprisonment in
the state prison. Every other crime is a misdemeanor."
Manifestly, then, under California law, all crimes are either
felonies or misdemeanors. Manifestly, also, section 17 was
enacted for the purpose of providing a convenient division of
crimes into the lesser and the greater, to the end that, in other
legislation, the terminology and segregation provided by that
section might be taken advantage of whenever, in such legis-
lation, it became necessary to draw a distinction or to allow
a difference between crimes of the greater and crimes of the
lesser magnitude. But in section 287 of the Code of Civil
Procedure no distinction is made between the two grades of
offense. It is true that the terminology of section 17 is there

adopted, but not for the purpose of making use of the segregation there devised. Section 287 is as all-inclusive of crimes as is section 17 itself. The former is to be read as if, in terms, it provided for the removal of an attorney for the "conviction of any crime involving moral turpitude," for such is its legal effect. Therefore, the crimes denounced by section 5470 of the Revised Statutes of the United States are within the term of section 287 of the Code of Civil Procedure whenever they involve moral turpitude.

The petitioner takes the position that the crime of which he was convicted does not involve moral turpitude and that the order of disbarment should be set aside for that reason. Many of the courts of the land have approved the definition given in Bouvier's Law Dictionary, to the effect that "everything done contrary to justice, honesty, modesty or good morals, is done with turpitude." The offense committed by the petitioner comes within that definition. To receive fifteen thousand dollars in currency from one who has stolen it from the mails, and to conceal and aid in the concealment of it, the receiver taking the money with knowledge of the theft, is surely not consonant with the principles of natural justice. Such a course of conduct is as surely dishonest and immoral. In addition to the definition of Bouvier, we may refer to the opinion in the *Matter of Coffey*, 123 Cal. 522, [56 Pac. 448], in which one convicted of attempted extortion is held to be guilty of an offense involving moral turpitude and in which the definition is approved and adopted.

These considerations cover all the points made by way of assault upon the integrity of the order of disbarment. There yet remains the question whether the petitioner is entitled to a reinstatement because of a reformation of his character. No satisfactory evidence is furnished us showing either that the petitioner has reformed or that he has not. Several letters bearing upon the question of his conduct and character are now before us. None of them is verified and the names of all the signers of them, except three, are appended in typewriting. A proceeding of this character presents serious questions for the consideration of a court. As we said, in effect, in the opinion in *In re Shepard, supra*, such a proceeding is one in which the public has a large interest. Whenever a lawyer has suffered disbarment, the order has been made principally with a view to the protection of the public from

the possibility of harm being wrought by one who, having once been licensed to practice law, has been found unworthy the confidence of those who may need the services of lawyers. When a reinstatement is asked by one resting under such a judgment, his request cannot be granted except upon some formal showing of a reformation of character. It has been the usual practice in California to receive, in support of such applications, evidence in the form of affidavits (*In re Treadwell*, 114 Cal. 24, [45 Pac. 993] ; *In re Shepard*, 35 Cal. App. 492, [170 Pac. 442]), although, in the Shepard case, an unverified petition was presented as coming from a considerable number of judges and lawyers, in addition to the affidavits there considered. An opinion in another case refers to the evidence of reformation as having been in the form of "testimonials" signed by judges of the superior court and prominent attorneys. (*In re Burris*, 147 Cal. 370, [81 Pac. 1077].) These testimonials and the above-mentioned petition in the Shepard case came from judges and lawyers of California, all of whom were probably known to the courts which passed upon the cases, and all of whom were morally bound by their oaths as attorneys at law not to recommend a disbarred attorney for reinstatement in the courts of their state unless they were satisfied of the rehabilitation of his character. (Code Civ. Proc., sec. 282, subds. 1, 2.) In the present proceeding there are nine signers of letters asking the reinstatement, including those whose names appear in typewriting, one or two of the communications being signed jointly by several. Of the nine, seven are lawyers, but they all reside in the state of Washington, where the petitioner also has had his residence. One of the remaining two signers is presumably a resident of California, as his letter was written from a place within the state. There is no evidence upon which to consider the petitioner's application for reinstatement.

The application is denied.

Conrey, P. J., and James, J., concurred.