[Civ. No. 3999. Second Appellate District, Division Two.—December 27, 1922.]

In the Matter of the Application of CLYDE E. CATE.

[1] ATTORNEY AT LAW—DISBARMENT—PROTECTIVE MEASURE.—The merits of an application for reinstatement of an attorney at law after disbarment are not in any way affected by the belief of the signers of the petition that the applicant has been sufficiently punished, since a disbarment is not punitive in character, but is a measure protective of the profession and of the public which finds it necessary to resort to the services of lawyers.

[2] ID. — REINSTATEMENT OF DISBARRED ATTORNEY — REFORMATION — EVIDENCE—PRODUCTION OF FACTS.—No disbarred attorney can be reinstated in his old place in the profession except upon a showing of facts aided perhaps by affidavits or even letters of well-known persons, particularly lawyers and judges, expressing a conviction, based on a statement of facts, that the petitioner for reinstatement has reformed, and all demonstrating that he is fit to resume the ermine which he has already polluted.

[3] ID.—DEGREE OF PROOF.—One who has been disbarred for grossly immoral conduct should not be reinstated in the ranks of the legal profession except upon overwhelming proof of reform.

[4] ID.—VACATION OF JUDGMENT OF DISBARMENT—ATTITUDE OF COURTS. A choice between suspension and disbarment being allowed by the statute to the court to which an accusation for disbarment

2.  Reinstatement of disbarred attorney, note, Ann. Cas. 1912A, 813.

is addressed, and it being possible that an appeal may be taken from the judgment pronounced by such a court, a judgment of disbarment will not be set aside lightly, even in a proceeding for the reinstatement of the disbarred individual.

[5] Id.—Proceedings for Reinstatement—Nature of.—Proceedings for reinstatement after disbarment, although generally so styled, are only popularly so called, for they are really but applications for admission to the bar and not applications to vacate orders of disbarment, and should be considered as though they were applications for admission by lawyers coming from sister states.

[6] Id.—Refusal of Reinstatement—Insufficiency of Evidence.— An application for reinstatement of an attorney who had been disbarred for misconduct and who had pleaded guilty to a charge of embezzlement of funds of a client must be denied where accompanied only by unverified letters and petitions of employers, lawyers, and others based in the main upon the "belief" of the signers that the applicant had been sufficiently punished without any evidence of facts showing reformation.

APPLICATION for reinstatement as a member of the Bar. Denied.

The facts are stated in the opinion of the court.

Vincent V. Vaughan for Petitioner.

Norman S. Sterry and G. R. Crump for Respondent Los Angeles Bar Association.

WORKS, J.—Petitioner was admitted to the Bar on June 14, 1912, at the age of twenty-one. He pursued the even tenor of his way as a practicing lawyer for several years, nothing appearing in the record here to have affected his professional integrity or standing until January 31, 1917, on which date an accusation was filed against him with the grievance committee of respondent Bar Association. From that date forward his troubles came thick and fast. Other charges against him were filed with the same committee on March 23, June 7, and August 20, 1917, and March 8, 1918. All of these matters were investigated by the committee and a report in each of them adverse to petitioner was made to the Bar Association. Some of the charges resulted in findings by the committee that petitioner had been guilty of unethical conduct, while it was found in others that he had

embezzled the money of his clients. On February 1, 1918, a criminal complaint was filed in the superior court against petitioner charging him with the embezzlement of six hundred dollars while acting as the agent of a certain party. This charge appears not to have been connected with any of the matters covered by the various accusations made to the grievance committee. Petitioner pleaded guilty to the charge, was admitted to probation, and was later discharged. On April 27, 1918, an accusation praying the disbarment of petitioner was filed in the superior court, the proceeding being based on two of the charges which had been presented to the grievance committee. A judgment of disbarment followed in May or June, 1918. On June 1, 1921, an application was presented to division one of the court of appeals of this district praying the reinstatement of petitioner as a member of the Bar, but the petition was denied for the reasons stated in the opinion of the court (*In re Cate*, 54 Cal. App. 401 [201 Pac. 964]). The present application for reinstatement was filed July 10, 1922.

Ever since his disbarment petitioner has been under the employment of the Standard Oil Company at its Fresno branch, except that, as indicated by a letter in the record, he voluntarily gave up his place with that company on May 15, 1922, to take a position with the Hudson Automobile Company. Petitioner's uprightness in his employment with the Standard Oil Company is attested by letters and petitions signed by employees of the company. There is nothing in the record before us, however, to show the character of that employment, except that his petition and several of the documents accompanying it contain the general statement that it was one of trust and confidence. We are unable to determine from this statement to what extent petitioner has been subjected to temptation in his employment, to what extent he has been relieved of it by the surveillance or control of superiors, or whether he has been put "to the test necessary to purge him of the taint of his old wrongdoing and to satisfy us and the public generally that he would make a faithful and trustworthy practitioner at the Bar" (*In re Stevens*, 59 Cal. App. 251 [210 Pac. 442]).

[1] The signers of several of the letters and petitions which accompany the present application for reinstatement

ask that petitioner be granted the relief he prays, for the reason that he has been punished sufficiently by his disbarment, adjudged, as it was, four years before the filing of his application. Such a consideration can in no way affect the merits of the application. It was said in a proceeding similar to this that "In one or two of the affidavits in the record the statement is made that the petitioner has been punished enough, as if a disbarment were punitive in character. It is not. The removal of an attorney's name from the rolls of the profession is a measure protective in character; in a certain sense protective of the profession, but in a higher sense protective of the public which finds it necessary to resort to the services of lawyers" (*In re Shepard*, 35 Cal. App. 492 [170 Pac. 442]. See, also, 6 C. J. 581; *People* v. *Meyerovitz*, 278 Ill. 356 [116 N. E. 189]; *In re Rouse*, 221 N. Y. 81 [116 N. E. 782]; *In re Kerl*, 32 Idaho, 737 [8 A. L. R. 1259, 188 Pac. 40]).

[2] In addition to the letters and petitions from employees of the Standard Oil Company, petitioner's reinstatement is advocated by letters from five lawyers, by a petition from twenty-three members of the Fresno County Bar Association, and by a petition from nine business men of Fresno. These letters and petitions, including those from the Standard Oil Company's employees, are based in the main upon the "belief" of the signers that petitioner has learned a valuable lesson from his disbarment and that, if reinstated, he will conduct himself with propriety in the future. None of these documents comes to us under the sanctity of the oath of a single signer, except that it may be said that the letters and petitions presented by lawyers, "all of whom were morally bound by their oaths as attorneys at law not to recommend a disbarred attorney for reinstatement in the courts of their state unless they were satisfied of the rehabilitation of his character" (*In re Thompson*, 37 Cal. App. 344 [174 Pac. 86]), are so sanctified. It was also said in the opinion last cited that when a reinstatement is asked by one resting under a judgment of disbarment "his request cannot be granted except upon some formal showing of a reformation of character." In their ordinary cases between man and man attorneys understand that they must produce *evidence* in order to prevail. Such being the necessary rule in litigation in which purely

private interests are arrayed against each other, it can surely be no less important to require that *evidence* be produced in support of an application for the reinstatement of a disbarred lawyer. In such matters every member of the legal profession has a deep interest, but the interest of the general public therein is immeasurably greater. In truth, whether the legal profession is to be maintained as an honest and honorable calling is a matter of grave general concern. "No one not a lawyer can fully realize the opportunities for undiscovered peculation, graft, and embezzlement which are afforded the practitioner at the Bar. No one not a lawyer can understand the degree to which the public is entitled to protection from dishonesty in the profession" (*In re Shepard, supra*). That these matters are fully appreciated by the courts is evident from the frequency with which petitions for reinstatement have been denied in this state of late years, during which, it is true, the number of disbarments themselves has substantially increased. We call attention to a list of opinions in cases in which reinstatements have been refused: *In re Shephard, supra; In re Thompson, supra; In re Cate, supra; In re Collins,* 188 Cal. 701 [206 Pac. 990] ; *In re Stevens, supra.* The terms upon which applications for reinstatement will be considered favorably are shown in the following cases in which reinstatements have been allowed: *In re Treadwell,* 114 Cal. 24 [45 Pac. 993] ; *In re Burris,* 147 Cal. 370 [81 Pac. 1077] ; *In re Mash,* 39 Cal. App. 548 [179 Pac. 897]. Light is cast on the subject, also, by the text which is found in 6 C. J., at page 615. We cannot say that all these authorities are strikingly illuminative of the point to which we attempt to attract attention. We do say, however, from a consideration of all of them, that no disbarred attorney can be reinstated in his old place in the profession except upon a showing of *facts,* aided perhaps by affidavits or even letters of well-known persons, particularly lawyers and judges, expressing a conviction, based on a statement of facts, that the petitioner for reinstatement has reformed, and all demonstrating that he is fit to reassume the ermine which he has already polluted. Without a statement of facts, affidavits and letters are of slight, if any, value. We quote from a few of the authorities language which illustrates the principle which it is our desire to inculcate, with

such explanatory remarks as we deem necessary in order to present them intelligently to the profession, and to those who have once been of the profession, but who have been found wanting and who may ask that purging which is implied in a readmission to its ranks. Italics used in these quotations, except as otherwise noted, are ours: One Treadwell was disbarred by an order of date April 2, 1885. In an opinion filed August 13, 1896, the supreme court said: "An application is now made in behalf of Mr. Treadwell by E. B. and George H. Mastick, attorneys of this court in good standing, asking that he be restored to said roll of attorneys. The *sworn* petition shows that continuously since the first day of January, 1887, Mr. Treadwell had been in the employment, as general assistant and confidential managing clerk, of the law firm composed by these petitioners and the late W. C. Belcher. . . . It states: 'That during the *nine* years which have elapsed since said Treadwell entered their employment, as aforesaid, petitioners have reposed in him the most implicit confidence, and have given him the management of matters of great importance, requiring the utmost care, secrecy and good faith, and have intrusted to him large sums of money and property belonging to themselves and others.'" After quoting further from the petition the court said: "It is further shown that the money, the appropriation of which caused the disbarment of Treadwell, has been by him fully refunded and repaid to those entitled thereto." After referring to exhibits which accompanied the petition, the court further remarked in passing on the merits of the application: "An order of judgment of disbarment is not *necessarily* final or conclusive for all time, and does not preclude the court for good cause from setting it aside and restoring the delinquent attorney"; and a quotation was made from the opinion in an English case to the effect that "Both on principle and precedent, sentences of exclusion from . . . the profession need not *necessarily* be exclusions forever." The court then ordered a reinstatement (*In re Treadwell, supra*). In another case in which a reinstatement was asked, there being no opposition, the supreme court filed but a short opinion, saying in the course of it, however, that the order of disbarment "was made *more than ten years ago* upon a charge involving no criminality, and no serious wrong to anyone,

though inexcusable in itself." A reinstatement was allowed (*In re Burris, supra*). In a late case, in which a reinstatement was refused, we said, after referring to the matter which had occasioned the disbarment of the petitioner, the italics being in the opinion there rendered: "We have no doubt . . . that the public, remembering the offenses of petitioner, would be shocked at his restoration to the legal profession except upon such a complete and conclusive showing of reform on his part as would convince the general mind that, if reinstated, he would discharge his every duty as a lawyer with an unswerving fidelity. Such consideration must be of controlling moment in every such proceeding as this. Not only must members of the profession be people of integrity, but the public must *know,* if possible, that they are people of integrity. Not only must the bar be entitled to the respect and confidence of the public, but it must, if possible, *actually enjoy* that respect and confidence. . . . Having these precepts in mind we could not reinstate any disbarred attorney at law if the general public could entertain any just doubt, upon the showing of reformation and regeneration made by him, whether the standing of the profession were not lowered by his return to its ranks" (*In re Stevens, supra*). In the same case we said, after mentioning certain affidavits presented by lawyers and judges in behalf of petitioner: "These lawyers and judges give us no facts upon which we can be reasonably certain that if petitioner were reinstated he would be faithful to the sacred trust which is reposed in every attorney at law." It is said in 6 C. J., at page 615, the italics being ours: "An order or judgment of disbarment is not *necessarily* final, or conclusive for all time, but an attorney who has been disbarred may be reinstated, on motion or application, for reasons satisfactory to the court. . . . The decisive question on such an application is whether the applicant is of good moral character in the sense in which that phrase is used when applied to attorneys at law and is a fit and proper person to be intrusted with the privileges of the office of an attorney. . . . The *proof* must be sufficient to overcome the court's former adverse judgment of the applicant's character."

[3] We have been at much pains to refer to these matters and to make these quotations, and all because of an ap-

parent lack of appreciation of the serious nature of a judgment of disbarment. We cannot but be impressed with the fact that the courts are confronted with an undue number of applications for reinstatement, especially when we consider the brief period of time which usually elapses between a given judgment of disbarment and the application for reinstatement which is quite likely to follow it. In passing upon such applications we are bound to consider, it is true, the possibility that every wrongdoer may reform (*In re Mash, supra; In re Stevens, supra*) ; but we are not bound to believe that true reform is wrought in short periods of time. Further, we are not bound to pronounce solemn judgment upon the mere faith of friends and acquaintances of applicants that reform has been accomplished. Something more than the faith of kindly disposed friends is necessary. However kindly disposed we ourselves may be, we are neglectful of our duty if we allow reinstatements except upon *evidence* of reform. We have lately said that one who has been disbarred for grossly immoral conduct "should not be reinstated in the ranks of the legal profession except upon the most clear. and convincing, nay, we will say upon overwhelming, proof of reform" (*In re Stevens, supra*). [4] That this position is justified will appear, if, in addition to all we have said above, we attend for a moment to the law of this state upon the subject of disbarments and suspensions. With the one exception provided by the statute, that is, where the person sought to be disbarred has been convicted of a felony, it is optional with a court exercising jurisdiction in a disbarment proceeding to frame its judgment in accord with the gravity of the offense charged. An order of suspension, instead of an order of "permanent" disbarment, may be made (Code Civ. Proc., sec. 299; *Bar Assn.* v. *Cantrell,* 53 Cal. App. 758 [200 Pac. 968]). The court had that option in the instance of the present petitioner, for, although he had pleaded guilty to the commission of a felony, his disbarment was asked on other grounds. The court determined that an order of suspension was not adequate to the moral delinquencies of petitioner and an order of disbarment followed. Yet we are now asked to pronounce a judgment which will operate in effect to make the order of disbarment but an order of suspension. Such is, of course, the effect of every order for a reinstatement. A

choice between suspension and disbarment being allowed by
the statute to the court to which an accusation for disbar-
ment is addressed, and, moreover, it being possible that an
appeal may be taken from the judgment pronounced by such a
court (see *In re Riccardi*, 182 Cal. 675 [189 Pac. 694]), it
must of necessity follow that a judgment of disbarment will
not be set aside lightly, even in a proceeding for the re-
instatement of the disbarred individual.

[5] Proceedings of this nature are generally styled pro-
ceedings for reinstatement, but they are only popularly so
called, for it has been determined that they are really but
applications for admission to the Bar, and cannot in strict-
ness be treated as applications to vacate the order of dis-
barment (*In re Mash, supra; Danford* v. *Superior Court*,
49 Cal. App. 303 [193 Pac. 272]). We therefore must con-
sider the present petition as if it were an application for
admission by one who came to us from a sister state with
the record as a lawyer there similar to the record which pe-
titioner established when he was a member of the bar here.
Can it be conceived that one presenting himself with such
a record of unenviable achievement in another state could
be welcomed to the Bar of California upon the meager show-
ing of rehabilitation of character which is made by the
present petition and its accompanying letters and petitions?
We cannot ourselves conceive the possibility of such an out-
come.

[6] We must refer to one matter which to our minds
casts light upon the question whether petitioner's char-
acter really has been reformed; in fact, upon the question
whether even now he appreciates the serious nature of his
past misdeeds as a lawyer. Up to the time, one year ago,
when division one of the court of appeals of this district
passed upon petitioner's earlier application for a reinstate-
ment, he had made no attempt to reimburse certain persons
who had been the victims of his misappropriation of funds,
persons who were among those who had made complaint
against petitioner to the grievance committee of respondent
Bar Association. Not only so, but attempts in that direc-
tion which he has since made have been undertaken at the
prompting of the counsel who represents him in this pro-
ceeding and not from the spontaneous pricking of his own
conscience. Petitioner acknowledges that he owes the per-

sons in question at least two hundred dollars. He is now unable to locate them and they are finally to be deprived, as it appears, of the right to their money. An earlier attempt to reimburse them might have been successful, and petitioner might thus have made partial amends for the wrong he did in the particular instance in question, but his delay in attempting to make restitution appears to have perpetuated the original wrong. Such a condition of affairs comes far from deserving our commendation.

It is our duty to scan carefully every application of a disbarred attorney for reinstatement. It is our duty to acknowledge the possibility that every wrongdoer may reform and to allow a reinstatement in every case in which a genuine reform is shown, yielding some consideration to petitions for reinstatement purely from the standpoint of the petitioner, but viewing them more broadly from the standpoint of the rights and needs of that public which deserves an adequate protection from the grafts and peculations of dishonest lawyers. Our duty goes no further. "When a member of the profession has been found lacking in the requisites which go to make him a helper to his clients, and has been discovered to possess aims, views and purposes which indicate a moral obliquity in him, and which might make his clients his victims, it is well that he were removed from the possibility of doing them harm. When he has been once disbarred, a mistaken charity should not restore him to his position. That restoration should only come when he has lived long enough after his disbarment in honorable intercourse with his fellow-citizens to demonstrate that he is both tried and true" (*In re Shepard, supra*).

Petition denied.

Finlayson, P. J., and Craig, J., concurred.