[Civ. No. 4702. Second Appellate District, Division Two.—April 20, 1926.]

In the Matter of the Application of CLYDE E. CATE for Reinstatement as an Attorney at Law After Disbarment.

[Civ. No. 4733. Second Appellate District, Division Two.—April 20, 1926.]

In the Matter of the Application of WALTER H. STEVENS for Reinstatement as an Attorney at Law After Disbarment.

[Civ. No. 5303. Second Appellate District, Division Two.—April 20, 1926.]

In the Matter of the Application of VERNON CRUICK-SHANK for Reinstatement as an Attorney at Law After Disbarment.

[1] Attorney at Law—Reinstatement After Disbarment—Determination of Mental and Moral Qualifications.—In proceedings brought by a disbarred attorney at law for reinstatement, the two prime questions to be determined are, first, whether the applicant possesses the honesty, integrity, and general morality which would enable him to reassume the discharge of the trust of which he has been deprived, and, second, if he has the degree of learning in the law that would enable him to efficiently discharge his duty to the public.

---

1. See 3 Cal. Jur. 752; 2 R. C. L. 1114.

[2] ID.—MORAL QUALIFICATIONS — PRESENTATION OF EVIDENCE — FINDINGS REQUIRED.—In such a proceeding, evidence contrary to that presented by the applicant in the form of affidavits accompanying his petition should be uncovered and presented, if it exists, and findings of fact should be made upon all the evidence produced either by the applicant or the respondent.

[3] ID. — MENTAL QUALIFICATIONS — RE-EXAMINATION OF APPLICANT — DISCRETION OF COURT.—An applicant for reinstatement as a member of the bar is not required to submit himself to the Board of Bar Examiners for an examination as to his mental qualifications, but the question of the necessity for such an examination will be left to the sound discretion of the courts, depending upon the circumstances of the particular case.

[4] ID. — SCOPE OF EXAMINATION — QUESTION TO BE CONSIDERED. — In the exercise of the discretion vested in the courts to order the re-examination of an applicant for readmission to the bar touching his mental qualifications, there should be considered the age of the applicant at the time of his admission to the bar; whether he took an examination to test his qualifications when admitted and the nature and extent of such examination; the length of time he practiced law and the nature and extent of the business conducted during his practice and the ability with which he performed his duty as a lawyer; the nature of his pursuits since disbarment and the extent of his mental activity generally; the length of time which has elapsed between the date of disbarment and the filing of the petition for reinstatement; his soundness of mind at the time of the investigation and whether any alleged unsoundness be total or partial, continuous or occasional, and his physical condition at the same time, in so far as it may affect his mental ability to discharge his duties to his clients or to perform generally the labors of the profession.

[5] ID.—SCOPE OF INQUIRY.—In individual cases considerations other than those laid down as guides in determining the mental qualifications of applicants for re-admission to the bar may be discovered, which will aid in determining whether there is a question as to an applicant's possession of the mental qualifications requisite to the performance of the duties of the legal profession, and the rule of *ejusdem generis,* or any other restrictive tenet of construction, may not be invoked to prevent a full examination into every subject which may aid in weighing an applicant's mental qualifications.

[6] ID. — MORAL REHABILITATION — PUBLIC INTEREST. — To the extent that a disbarment is disciplinary or punitive, the courts, in removing the ban, should exercise a clemency which, in some

3. See 3 Cal. Jur. 752, n. 12, and Supplement.
6. See 3 Cal. Jur. 751.

measure, may be likened to that residing in the exercise of the pardoning power of the executive, and if the erring practitioner be viewed as a culprit, and his fate alone be regarded, he should be treated with the last degree of leniency; but the court must be satisfied that the effort he has made toward a rehabilitation of his character has been successful, to the end that the public shall not be called upon to suffer from his relapse into moral delinquency.

[7] ID.—MAINTENANCE OF PROFESSIONAL STANDARDS—PROTECTION FROM INCOMPETENCY.—The public, in its dealings with the legal profession, deserves the protection of the courts from incompetency as well as knavery, and the maintenance of that standing at the bar, which the public interest requires, demands not alone a sterling honesty in the individual lawyer, but an intellectual capacity as well.

[8] ID. — MENTAL ATTRIBUTES — CIRCUMSTANCES REQUIRING EXAMINATION.—The ascertainment of the mental attributes of an applicant for reinstatement to the bar may require the taking of steps to ascertain if the circumstances in a given case are such that the applicant should submit himself to an examination in order to test his qualifications, and if this question is resolved in the negative, the issue as to mental qualifications is at once determined, but if it is decided in the affirmative, the examination will then be taken.

[9] ID.—EXAMINATION AS TO MENTAL AND MORAL QUALIFICATIONS—REFERENCE—BOARD OF BAR EXAMINERS.—Where the court decides that an examination of the mental and moral qualifications of an applicant for reinstatement to the bar is necessary, such examination will be referred, preliminarily at least, to the board of bar examiners for an investigation and report under section 279 of the Code of Civil Procedure.

[10] ID.—EVIDENCE—BURDEN OF PROOF.—In proceedings referred to the board of bar examiners for the examination of the moral and mental qualifications of an applicant for reinstatement to the bar after disbarment, the burden of proof is upon the applicant, who will first produce his evidence, that of respondent will then be presented, and the applicant will close.

[11] ID.—TRIAL—PROCEDURE.—In such proceedings, where the applicant's evidence is controverted he will be given the fullest opportunity, within a reasonable time, to meet in his closing case all affirmative evidence which shall have been produced against him.

[12] ID.—MENTAL QUALIFICATIONS—NATURE OF EXAMINATION.—In such proceedings the examination of the mental qualifications of the applicant may be of a special character, the nature of the examination in each instance to depend upon the exigencies of the particular case.

[13] ID.—FINAL DETERMINATION BY DISTRICT COURT OF APPEAL.—When an examination of the mental qualifications of an applicant for reinstatement as an attorney at law is found necessary, the nature thereof will, in its entirety, be left for the final determination of the district court of appeal.

[14] ID.—TRANSCRIPT OF EVIDENCE—FINDINGS.—Where an application for reinstatement is referred to the board of bar examiners for determination of the moral and mental qualifications of the applicant, the board will, after completing its investigation, report the evidence by filing a transcript or copy with the clerk of the district court of appeal, together with its findings upon the issues of whether or not the applicant is possessed of such moral qualifications as to entitle him to a reinstatement, whether or not there is such doubt as to the mental qualifications of the applicant that an examination is necessary to test them, and the character and extent of the examination to which the applicant should be subjected.

[15] ID.—EXCEPTION TO FINDINGS—PROCEDURE.—In such a proceeding, either the applicant or the respondent may take exceptions to any or all of the findings of the board.

---

(1) 6 C. J., p. 615, n. 81.   (2) 6 C. J., p. 616, n. 94 New.   (3) 6 C. J., p. 616, n. 94 New.   (4) 6 C. J., p. 616, n. 94 New.   (5) 6 C. J., p. 616, n. 94 New.   (6) 6 C. J., p. 615, n. 79, 84.   (7) 6 C. J., p. 568, n. 23.   (8) 6 C. J., p. 616, n. 94 New.   (9) 6 C. J., p. 616, n. 94 New.   (10) 6 C. J., p. 615, n. 95.   (11) 6 C. J., p. 616, n. 94 New.   (12) 6 C. J., p. 616, n. 94 New.   (13) 6 C. J., p. 615, n. 85.   (14) 6 C. J., p. 616, n. 94 New.   (15) 6 C. J., p. 616, n. 94 New.

APPLICATIONS for reinstatement as attorneys at law after disbarment. Referred to Board of Bar Examiners for further proceedings.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreve for Petitioner Cate.

Gates & Randles and James D. Randles for Petitioner Stevens.

Kimball Fletcher for Petitioner Cruickshank.

Oscar Lawler, Guy R. Crump, Eugene Overton and Norman Sterry for Los Angeles Bar Association, Respondent.

WORKS, J.—Each of the petitioners in these proceedings was formerly an attorney at law. Each is now resting un-

der the ban of a judgment of disbarment. Each asks for a reinstatement in the ranks of the profession. We refrain, for reasons which will appear upon a perusal of what follows, from stating the matters of fact upon which a reinstatement is prayed in each proceeding.

A recent decision of the supreme court (*In re Stevens*, 197 Cal. 408 [241 Pac. 88]), makes it convenient and proper for us to lay down for the conduct of the present proceedings not only such rules as may apply specifically to them, but which as well may serve as our guide, whenever applicable, in other matters of a like character which in the future may be presented for our consideration.

[1] In every instance in which is presented an application such as those which now lie before us, two prime questions will arise. 1. Is the applicant in the possession of the honesty, integrity, and general morality which would entitle him to reassume the discharge of the trust of which he has been deprived? 2. Has he the degree of learning in the law that would enable him to discharge efficiently his duty to the public whose servant he desires again to become? The attributes contemplated by the first of these questions will be referred to for convenience, throughout this opinion, as moral qualifications, while those intended by the second question will be designated as mental qualifications.

[2] Upon the score of his moral qualifications each of the petitioners presents evidence in the form of affidavits, accompanying his petition for reinstatement. Contrary evidence, if it exists, should be uncovered and presented, and findings of fact should be made upon all the evidence which may be produced either by the petitioners or by respondent. The process by which the evidence shall be accumulated, sifted, and weighed is pointed out below. No more is to be said at present upon the subject of the evidence which is to bear on the issue of moral qualifications.

[3] The question as to the mental qualifications of the respective applicants calls for a more extended consideration, as that matter was the subject of the opinion *In re Stevens, supra,* and is therefore our principal concern here. In that opinion the supreme court decided that the sections of the Code of Civil Procedure creating and defining the powers of the state board of bar examiners do not require that an applicant for reinstatement as a member of the bar

shall submit himself to the board for an examination as to his mental qualifications. In concluding its discussion of that particular question, and in laying down what we may term a rule of discretion, as distinguished from the rule of the statute which was contended for by the respondent in the proceeding, the court says:

"In any event, it is proper to say that we are not prepared, in the absence of legislative expression, to accept the conclusion that every applicant for restoration to practice must submit to a re-examination as to his mental qualifications. No adequate reason occurs to us for making the rule invariable. The law is interested in the regeneration of erring attorneys, and in the enforcement of a sound discipline its disposition ought not to be to place unnecessary burdens upon them. In some cases, where it would be in the interest of justice to restore to his life work a disbarred attorney, and concerning whose grasp of the law there is no question, such a requirement would be unnecessary. On the other hand, cases may arise where it is apparent the applicant has not shown as an attorney that he possesses the requisite mental qualifications, and in such cases the rule contended for would be properly applied. In our opinion, the alternative rule proposed by the respondent that the question of a re-examination of the applicant by the board of bar examiners should be left to the sound discretion of the courts we hold to be the proper one, and in a case calling for such re-examination and restoration the same procedure may be followed as in the case of an original applicant seeking admission."

[4] It seems clear to us that in an endeavor in most proceedings to make application of the rule of discretion here enunciated, a sifting and weighing of evidence must become necessary. It may require but a perfunctory effort in an occasional instance to determine whether the applicant is one "concerning whose grasp of the law there can be no question," but we apprehend that in a vast majority of cases the ascertainment of the applicant's mental attributes will not involve a labor so easily to be discharged. A part of the language of the supreme court, included in the paragraph which is quoted above, bears upon this question, and it is so presented as to require the most serious consideration on our part. The court says, immediately following its

reference to those "concerning whose grasp of the law there is no question": "On the other hand, cases may arise where it is apparent the applicant has not shown as an attorney that he possesses the requisite mental qualifications, and in such cases the rule contended for would be properly applied." We understand this sentence to contemplate the cases of applicants who have not shown while they were attorneys, and before their disbarment, the possession of the requisite mental qualifications. If this view is correct, and if we take the context of the entire opinion with the sentence, we regard the expression as showing nothing more than an intention on the part of the court to state, by way of illustration, a single circumstance or condition requiring an examination as to mental qualifications. It having been determined that a discharge of the duty contemplated by the rule of discretion announced by the court is incumbent upon the district courts of appeal, we cannot suppose that the discretion was intended to be circumscribed within the narrow limits of the sentence. The discretion having been held to exist, it is logical to believe, upon general principles, that we are to exercise it in its fullness, subject only to the application of a proper corrective for its abuse in particular cases, as such cases may arise. Not only so, but as we have already remarked, the sentence does not appear to have been intended as a limitation upon our power. Furthermore, it seems obvious that a variety of considerations, not included within the expression, may show a necessity for the ascertainment of the mental qualifications of one who, having been disbarred, would procure a restoration to the ranks of the legal profession. It is proper to state here, in so far as we may outline them in advance, the sources from which may arise such a question, including the matters mentioned by the supreme court. These are: The age of the applicant at the time of his admission to the bar; whether he took an examination to test his qualifications when admitted; the nature and extent of the examination, if he did take one; the length of the period during which he practiced law, from admission to disbarment; the nature and extent of the business which he conducted during his practice and the ability and facility with which he performed his duty as a lawyer; the nature of his pursuits since disbarment, with particular reference to the question whether his employ-

ments have required the exercise of mental activity; the extent of his mental activity generally since disbarment, and, especially, the extent to which he has kept himself informed in the law and in the changes which have been effected in it and in its administration; the length of time which has elapsed between the date of disbarment and the filing of petition for reinstatement; the petitioner's soundness of mind at the time of the investigation under application for reinstatement, whether any alleged unsoundness be total or partial, continuous or occasional; and his physical condition at the same time, in so far as it may affect his mental ability to discharge his duty to his clients if his reinstatement be ordered, or to perform generally the labors of the profession.

[5] While in this catalogue we have stated matters which in particular cases may turn out to be trivial, and others which in every case will require but a brief or casual examination, we do not pretend to have exhausted the subject. In individual cases other considerations may be discovered which will aid in determining whether there is a question as to the applicant's possession of the mental qualifications requisite to the acceptable performance of the duties of the legal profession. We do not intend that the rule *ejusdem generis,* or any other restrictive tenet of construction, shall be invoked against the above bill of particulars to prevent a full examination into every subject which may aid in weighing the mental qualifications of any applicant for reinstatement who may come before us. And if we appear to descend to trivialities in considering the various phases of the general subject with which we deal, let it be remembered that the subject is one of transcendent import, even to its every ramification, and that we endeavor to treat it in such fashion that what rules we lay down may serve as guides, in the degree of completeness with which our ingenuity may invest them, for our future labors in cases like the three which now give us such great concern.

[6] Having premised so much concerning both the moral and the mental qualifications of applicants for reinstatement, let us say something as to principles which in a great measure should influence the ascertainment of the moral attributes of such a petitioner, returning again, later, to the subject of mental qualifications. The supreme court says

in the prevailing opinion *In re Stevens, supra:* "The law is interested in the regeneration of erring attorneys, and in the enforcement of a sound discipline its disposition ought not to be to place unnecessary burdens upon them," and language to the same effect is found in a dissenting opinion filed by two of the justices. It is to be observed that the expression just quoted from the majority opinion of the court was employed in the course of a discussion as to the correctness of the contention that a petitioner for reinstatement must undergo an examination for the ascertainment of his mental qualifications, but in form it would seem to apply to the question of the determination of moral qualifications as well. To the extent that a disbarment is disciplinary or punitive, the courts, in removing the ban, should exercise a clemency which in some measure may be like unto that residing in the exercise of the pardoning power by the executive. If the erring practitioner be viewed as a culprit, and his fate alone be regarded, we may treat him with the last degree of leniency. We understand the expression of the supreme court so to operate, and no further. After all, however, the real question to be determined, even under the language employed by the court, is as to where shall be drawn the line between "unnecessary burdens" upon the petitioner for reinstatement and those requirements which, while they may be onerous upon him, are imperatively necessary to the protection of those who so greatly outnumber him that his fate, as compared with their interest, is dwarfed into insignificance. The supreme court has said, in dealing with the right of the legislature to authorize the disbarment of lawyers who have shown the possession of a bad moral character: "It requires no argument to prove that the possession of this prerequisite," a good moral character, "to the receipt of and continued exercising of the right or privilege of engaging in the practice of the law is a matter of such paramount public interest as to entirely justify the legislature in prescribing that the commission of crime involving moral turpitude by one either seeking to obtain this right or privilege or thereafter exercising it should constitute sufficient ground for its original den[i]al or for its subsequent revocation" (*In re Collins,* 188 Cal. 701 [32 A. L. R. 1062, 206 Pac. 990]). This paramount public interest of course demands the tender care of the

courts when reinstatements are asked, as imperatively as it requires the solicitude of the legislature in providing for admissions or for disbarments. "When a member of the profession has been found lacking in the requisites which go to make him a helper to his clients and has been discovered to possess aims, views, and purposes which indicate a moral obliquity in him, and which might make his clients his victims, it is well that he were removed from the possibility of doing them harm. When he has been once disbarred, a mistaken charity should not restore him to his position" (*In re Shepard,* 35 Cal. App. 492 [140 Pac. 442]). A proceeding for reinstatement is "one in which the public has a large interest" (*In re Thompson,* 37 Cal. App. 344 [174 Pac. 86]). "In truth, whether the legal profession is to be maintained as an honest and honorable calling is a matter of grave general concern" (*In re Cate,* 60 Cal. App. 279 [212 Pac. 694]). "In proceedings of this character the court owes a solemn duty to the community and to the legal profession which must be performed without regard to feelings of sympathy for the applicant" (*In re O'Connell,* 64 Cal. App. 673 [222 Pac. 625]). It is for these reasons that a most searching investigation must be made into the moral qualifications of applicants for reinstatement. Each of the three petitioners who are now before us doubtless is convinced that he is entitled to be clad again in the robes of the profession, and each is deserving of credit for the effort he has made toward a rehabilitation of character. We, however, must be satisfied that the effort has been successful, to the end that the public shall not be called upon to suffer from a relapse of any of the petitioners into moral delinquency. What is plain to petitioners must be made plain to us.

[7] When we turn again to the matter of mental qualifications, it seems that the same principles should govern. The public, in its dealings with the legal profession, deserves at our hands a protection from incompetency, as well as from knavery. The maintenance of that standing at the bar which the public interest requires demands not alone a sterling honesty in the individual lawyer, but an intellectual capacity as well. The law is essentially a learned profession. It is because of this truth that we have attempted above to state with meticulous care the criteria whereby to determine

whether there is reason to question the mental qualifications of a petitioner for reinstatement.

[8]    From what we have said it is apparent that the ascertainment of an applicant's mental attributes may require the taking of two steps. The first branch of the inquiry may be stated in the form of a question: Are the circumstances in a given case such that the applicant should submit himself to an examination in order to test his qualifications? If this question is resolved in the negative, the issue as to mental qualifications is at once determined. If it is decided in the affirmative, the examination will then be taken, and this constitutes the second branch of the inquiry. At present we are concerned only with the first of the two steps, and it is this first or preliminary step that is contemplated by the remark of the supreme court *In re Stevens, supra,* as to those "concerning whose grasp of the law there is no question." Without descending to particulars, we cannot, from the evidence which is now before us, say that there is no question, in the case of any of the present petitioners, as to his grasp of the law. The determination of the first branch of the issue as to the mental qualifications of each of the three applicants will therefore require further and special consideration.

[9]    What machinery shall be employed as to each of petitioners, as a means whereby to determine the issue as to his moral qualifications and the first branch of the issue as to his mental qualifications? The taking of evidence upon disputed questions of fact doubtless is being confided, in an increasing degree as time passes, to referees, by the district court of appeal. Certainly, that method is being more and more pursued by this division of the court. It seems feasible to adopt that means in the present instance. In fact, in a very recent case in which a reinstatement was asked (*In re O'Connell,* 49 Cal. App. Dec. 160, see, also, 199 Cal. 538 [48 A. L. R. 1232, 250 Pac. 390]), one of the justices was designated as a "commissioner" to take evidence upon the issue as to moral qualifications. This particular form of reference has its advantages, but it has also its disadvantages. We think a more satisfactory means of solving, preliminarily at least, the two questions with which we now deal is by reference to the state board of bar examiners, a body ready at hand and which has the ma-

chinery necessary to a proper performance of the work of taking evidence and of making findings upon it. We have lately said, in a case in which was assailed the constitutionality of the sections of the Code of Civil Procedure providing for the creation of the state board of bar examiners and prescribing its functions: "Bar examiners, or law examiners, as they are termed in some states, have been provided for in many jurisdictions as aids to the courts in the discharge of the duty of ordering admissions to the bar. These bodies are so helpful to the courts, and the laws concerning them trench so little upon the rightful exercise of the judicial power to admit, that the new instrumentality practically everywhere has been put into operation without apparent thought as to an unconstitutionality upon the grounds suggested by the present applicant" (*In re Chapelle,* 71 Cal. App. 129 [234 Pac. 906]). It is provided by section 279 of the Code of Civil Procedure, an enactment prescribing the rules for admission to the bar, on motion, of attorneys coming from other states and countries: "Before admitting any such person to practice, the court shall require an investigation and report by the board of bar examiners as to his moral and other qualifications, unless the court shall otherwise direct in a particular case." The wisdom of this requirement long has been evident. The board has proven its efficiency in the discharge of the duty imposed upon it by the section, and we anticipate the same happy result from the practice of confiding to that body a similar line of work in those cases in which, in the exercise of a sound discretion, we may think a searching inquiry should be made into the alleged moral regeneration or into the mental qualifications of those who, having been disbarred, may petition for a reinstatement as attorneys at law.

It is perhaps not proper for us to lay down in advance the rules of evidence which are to govern the board of bar examiners in the conduct of the three references which we are about to make to that body, or which are to guide ourselves later, except to the very limited extent which will be specified in a succeeding paragraph of this opinion. Those matters have not been argued in the briefs and we should not make a decision upon them in the absence of an opportunity to the parties to be heard. We shall, however,

cite the various cases in this state which deal, more or less thoroughly, and with greater or less directness, with those questions, and which cite earlier decisions touching the general subject, to the end that the decided cases may be found in one place for the benefit of all concerned in these or in future proceedings of a like character. They are: *In re Shepard*, 35 Cal. App. 492 [170 Pac. 442]; *In re Thompson*, 37 Cal. App. 344 [174 Pac. 86]; *In re Hahn*, 56 Cal. App. 702 [206 Pac. 473]; *In re Stevens*, 59 Cal. App. 251 [210 Pac. 442]; *In re Cate*, 60 Cal. App. 279 [212 Pac. 694]; *In re O'Connell*, 64 Cal. App. 673 [222 Pac. 625]; *In re Morton*, 75 Cal. App. 497 [243 Pac. 32]; *In re O'Connell*, 49 Cal. App. Dec. 160, see, also, 199 Cal. 538 [48 A. L. R. 1232, 250 Pac. 390].

[10] One rule stands out so clearly from these cases, although they do not specifically announce it, and it is apparently so correct, that we do not hesitate here to declare it. The burden of proof is upon one who seeks, after disbarment, to accomplish a restoration to the ranks of the legal profession. Accordingly, in each of the present proceedings, the petitioner will first produce his evidence, that of respondent will then be presented, and the petitioner will close. [11] As individuals may always be found who will cast aspersions upon the integrity or the ability of those situated as are petitioners—and by this remark we would not discourage in the least degree the production of legitimate evidence contrary to their desires—each of the petitioners will be given the fullest opportunity, within a reasonable time, to meet in his closing case all affirmative evidence which respondent shall have produced against him. We refer specially to this matter because of the difficulty which is often experienced in an endeavor to meet evidence derogatory to character or standing.

[12] If it shall be determined finally that any of petitioners must undergo an examination to test his mental qualifications, a question will naturally arise as to what shall be the extent and character of the examination. In the opinion *In re Stevens, supra,* the supreme court has said that in a case calling for an examination to ascertain mental fitness "the same procedure may be followed as in the case of an original applicant seeking admission." We are of the opinion that the word "may" in this extract is in-

tended to be directory and not mandatory, and, whether that be so or not, we are of the further opinion that the supreme court, by the employment of the expression "the same procedure," did not intend to say that the character of examination to which an applicant for admission is subjected is to be required of an applicant for reinstatement. For the purposes of the present references, therefore, and until report upon them, we shall say that a special character of examination may be provided for any applicant for reinstatement, the nature of the examination in each instance to depend upon the exigencies of the particular case. [13] This matter, however, will in its entirety be, left for our final determination in any of these proceedings in which it shall be found that an examination is necessary.

The references about to be made to the board of bar examiners are several and not joint. That is to say, while we have treated the three proceedings together in this opinion, for convenience, they cannot be so handled by the board. Each of the proceedings will therefore be conducted and reported upon by the board independently of the other two.

[14] After completing its investigation in each proceeding the board of bar examiners will report the evidence by filing a transcript or copy of it with the clerk of this court, together with its findings upon each and every one of these issues, except that a finding may be omitted upon the third if the finding upon the second is in the negative: 1. Whether or not the applicant is possessed of such moral qualifications as to entitle him to a reinstatement. 2. Whether or not there is such doubt as to the mental qualifications of the applicant that an examination is necessary to test them. 3. The character and extent of the examination to which the applicant should be subjected.

[15] In each proceeding either the petitioner or the respondent may take exceptions to any or all of the findings of the board. The exceptions shall be presented in a manner similar to that followed *In re Ryzek,* 70 Cal. App. 23 [232 Pac. 473], and *In re Scott,* 70 Cal. App. 716 [234 Pac. 128].

Each of these matters is referred to the state board of bar examiners for proceedings in accordance with the foregoing opinion.

Finlayson, P. J., concurred.

CRAIG, J., Concurring.—Since the opinion rendered by our supreme court in *In re Stevens* (197 Cal. 408 [241 Pac. 88], it must be accepted as the law in this state that upon an application for reinstatement of a disbarred attorney the question of the mental qualifications of the applicant is one which may properly be made the subject of inquiry. I find nothing in that decision which permits a question to be raised concerning the existence of such qualifications previous to or upon the date of admission. A fact once existing is presumed to continue to exist. It is true that there are many conditions any of which might result in a lawyer ceasing to possess this faculty, but it would be quite infrequent that the circumstances of the transaction which resulted in disbarment would alone overcome the presumption above mentioned to the extent of requiring proof to be taken as to the existence of such mental qualifications. I doubt if such circumstances are shown by the records in the petitions involved in this decision. However, as the matter is not one involving an issue of jurisdiction, but is addressed to the sound discretion of the court, it may be that the facts here disclosed are sufficient to raise such a doubt in the judicial mind as to warrant further inquiry, and hence I concur in the order.