[Civ. No. 5352.    Second Appellate District, Division Two.—May 3, 1926.]

In the Matter of the Application of JAMES D. LAMOTTE for Reinstatement as an Attorney and Counselor at Law.

[1] ATTORNEY AT LAW — APPLICATION FOR REINSTATEMENT — MENTAL AND MORAL QUALIFICATIONS—EVIDENCE.—In this application for reinstatement of an attorney at law, it appearing that the crime that resulted in the disbarment of the petitioner was not one which in any way concerned his duty as a lawyer, or was in any way connected with his law practice, that the local bar association

---

1.   See 3 Cal. Jur. 751.

had appointed a committee to investigate his activities and conduct, subsequent to the disbarment, with the result that the committee recommended to the association that it further the desire of petitioner to procure a reinstatement at the bar, and the association, by unanimous vote, adopted a resolution recommending to the appellate court that the reinstatement be made, that petitioner's conduct since disbarment was highly creditable, and that he was possessed of the moral and mental qualifications which are necessary to every individual who would serve the public as a lawyer, the application was granted without a reference to the board of bar examiners.

(1) 6 C. J., p. 615, n. 81, 84, p. 616, n. 94.

APPLICATION for the reinstatement of an attorney at law after disbarment.    Granted.

The facts are stated in the opinion of the court.

Gilligan & Cobb for Petitioner.

No appearance in opposition to Petitioner.

WORKS, J.—This is an application for the reinstatement of an attorney at law after disbarment. The rules governing such matters and the procedure to be followed in disposing of them in this particular division of the district court of appeal are defined and laid down in the opinion in *In re Stevens*, 197 Cal. 408 [241 Pac. 88], and in our opinion *In re Cate, ante*, p. 495 [247 Pac. 231].

[1] Under these decisions it becomes our duty, in the present proceeding, to determine two questions: 1. What are the moral qualifications of petitioner, as touching his fitness to resume the work of the legal profession? 2. What are his mental qualifications, as affecting the same matter? We are able to answer these questions without making the reference which we found necessary in each of the three proceedings that were dealt with in the opinion *In re Cate, supra*.

Petitioner was disbarred pursuant to that portion of the statute which provides for the removal of an attorney upon his "conviction of a felony or misdemeanor involving moral turpitude, in which case the record of conviction shall be conclusive evidence" (Code Civ. Proc., sec. 287, subd. 1).

The crime that resulted in the disbarment was not one which in any way concerned petitioner's duty as a lawyer, nor was it in any way connected with his law practice. His moral character, therefore, has not been tainted with any turpitude involving loss or damage to any of that large class who find it necessary to employ the services of members of the legal profession. At the time of his disbarment petitioner had been engaged in the practice of the profession principally in the county of Riverside, in which jurisdiction he had maintained his law office and in which he resided. Some time before the filing of petitioner's application for reinstatement he requested the Riverside County Bar Association to appoint a committee to investigate his "activities and conduct" with a view of obtaining from the association a recommendation for his reinstatement. The committee was appointed and the investigation was made, with the result that the committee recommended to the association that it further the desire of petitioner to procure a reinstatement at the bar. Accordingly, at a regular meeting of the association held thereafter a resolution was adopted, by a unanimous vote, which recites that the investigation conducted by the committee was thorough and painstaking, that it covered "the past and present activities and conduct" of petitioner, and that it appears to the association that petitioner, by his exemplary conduct, has proven his fitness to be reinstated as a lawyer. The resolution then recommends to this court that the reinstatement be made.

Following petitioner's disbarment, and after his release from the imprisonment in the county jail which was imposed upon him as a punishment for his crime, which was a misdemeanor, he has engaged in several employments. There are before us affidavits from petitioner's superiors in some of the employments which he has exercised since his disbarment, and he gives ample reason for his inability to present affidavits relating to all of them. His reasons for leaving particular employments and taking up others are highly creditable to him. In each of the affidavits referred to it is shown that petitioner frankly disclosed to his prospective employer, in seeking the position, the fact of his disbarment and all of the occurrences which led to it. These affidavits exhibit, also, by specific statements

of fact, the thorough diligence, ability, honesty, and fidelity with which petitioner has discharged the duties of his various employments. One of petitioner's superiors, the city manager of the city of Glendale, frequently invited petitioner to his home because of his apparent worth and gives satisfactory evidence of his conduct in those surroundings. Another of petitioner's superiors has been in petitioner's home and gives evidence of the fine conditions which prevail there. The affidavit of petitioner's present superior shows that the corporation of which he is an officer will employ petitioner as counsel in important matters in the event of his reinstatement.

The offense which caused petitioner's disbarment was committed while he was in a state of intoxication from the excessive use of liquors. While this circumstance was no defense to the charge made against him, we can readily perceive from the nature of the offense that it probably would not have been committed if petitioner had not been in a state of inebriety. It is pertinent to remark here that he pleaded guilty to the charge. The record contains ample evidence that petitioner has never indulged in the use of intoxicants since the offense was committed.

Petitioner has shown the possession of the moral qualifications which are necessary to every individual who would serve the public as a lawyer.

We turn now to the question of petitioner's mental qualifications. He is of the age of thirty-four years. He was admitted to the bar in 1914, after an examination in open court' which covered a part of two days, that time being consumed in the examination of a rather large class of which he was one. The nature of the examination is indicated to some extent by the fact that about twenty-eight per cent of the class was denied admission. In preparation for his work as a lawyer petitioner attended the law school of a university for one year and read law with a practicing lawyer for a period the length of which is not shown. He was in the army for eighteen months and with the exception of that time he practiced law · continuously from his admission to his disbarment. A period of a few days more than three years has elapsed between the date of the disbarment and the filing of the present application. During that time petitioner has engaged in three employments that

made necessary the exercise of mental activity not greatly different from that required in some of the work of a practicing lawyer. For a little more than three months he was an adjuster for a credit association. The duties of this position required, as a part of his work, that he conduct the examination of judgment debtors on proceedings supplementary to execution, and on that account he resigned the employment for the reason, as he alleges, that he did not desire to violate the order under which he had been disbarred. Petitioner was for about nine months the escrow clerk of a bank. His present employment is as a claim adjuster for an automobile insurance corporation and in it he has been engaged for nearly two years. We have already observed that this corporation intends to employ petitioner's services as a lawyer in the event of his reinstatement. It is averred in the affidavit of an officer of the insurance company "that said James D. LaMotte. is given absolute authority to settle and adjust claims and in this capacity he very frequently is entrusted with the disposition of large sums of the company's money; that said James D. LaMotte has worked diligently, hard and faithfully during the time he has been employed by your affiant, and that his record and ability in the capacity in which he serves his employer is excellent; that he has at all times used sound discretion and good judgment in his work, and has always performed his said duties loyally to his said employer, and fairly to claimants."

Petitioner has been examined by us in open court upon some of the matters which are involved in this proceeding. He presents a good appearance and is mentally alert. Through information gathered during the examination we have had an opportunity to inspect pleadings, a brief and other papers prepared by petitioner while he was a member of the bar. We find from such inspection that the work done by him in those matters was satisfactorily performed.

We find, to quote the language of the supreme court in the opinion in *In re Stevens, supra,* that of petitioner's "grasp of the law there is no question."

In our opinion in *In re Cate, supra,* we declared the rule to be that the burden is upon a petitioner for reinstatement to show both the moral and mental qualifications without which such an application cannot be granted. In our

opinion the present petitioner has met the test which is by that rule required.

Petition granted.

Finlayson, P. J., and Craig, J., concurred.