[Civ. No. 13432. First Dist., Div. One. Mar. 11, 1948.]

NATHAN S. HOUSMAN, Appellant, v. BOARD OF MEDICAL EXAMINERS et al., Respondents.

Booth B. Goodman and Lionel Browne for Appellant.

Fred N. Howser, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Respondents.

BRAY, J.—Subsequent to the filing of our opinion a rehearing was granted and respondents were permitted to augment the record. As an examination of the augmented record discloses that, as shown hereafter, the trial court did not err in denying the amended petition for writ of mandate, we do not deem it necessary to discuss the matters raised concerning the action of the court in sustaining the demurrer without leave to amend, other than as to the first alleged cause of action.

■ The amended petition contained two causes of action. The first alleges that on October 18, 1943, the respondent Board of Medical Examiners denied arbitrarily, in abuse of their discretion and without any evidence contrary to that produced by petitioner as to his good moral character and his ability in medicine and surgery, except some newspaper reports allegedly considered by the board after submission, an application theretofore made by petitioner for the restoration of his license. The court was right in sustaining the demurrer to the first cause of action, which dealt with a prior application for and denial of restoration of license, as the issues therein involved are moot and waived by petitioner's failure to litigate them before, and by making a second application.

The second cause of action referred to a second application to the Board of Medical Examiners for restoration of petitioner's license to practice medicine and surgery which had been revoked in 1941 because of his conviction of "a felony, to-wit: perjury; preparing false evidence; and presenting false evidence." It alleged his incarceration at San Quentin, his release in December, 1942, his claimed rehabilitation, and then alleged that on October 18, 1943, the board had arbitrarily and in abuse of its discretion denied his application for restoration of his license, and asked the court to issue a writ of mandate to compel the board to restore it.

The original petition was filed in December, 1945. Based on this petition, on October 30, 1946, an order to show cause was issued, commanding respondents immediately after its receipt to restore the right of petitioner to practice medicine and surgery, or to show cause before the court on November 14 why they had not done so, and that they "certify at said time and place, petitioner's application, written communications, minutes of the Board, the record, motions, votings and proceedings of said case, and that the same will be inquired into by this Court." On November 27, a demurrer was sus-

tained to this petition. On December 4, the amended petition above mentioned was filed. The case came on to be heard on December 18, and respondents, answering the order to show cause, filed a demurrer to the amended petition. While respondents contend that the court had the right to consider, in passing on the demurrer, the entire board record '(a matter upon which, as before stated, we do not deem it necessary to pass), the court did. have the right, in determining whether the respondents had shown cause why they had not restored petitioner's license, to consider the entire record of the board, which had been brought before it in response to the order to show cause drawn and obtained by the petitioner.

The main contention made by petitioner at the hearing, so far as the proceedings outside the consideration of the demurrer were concerned, was that in a judicial review of the board's refusal to restore his license, the petitioner was entitled to .a trial de novo, or at least to introduce additional evidence, rather than be limited to an examination by the court of the board's proceedings as shown by the full record. In view of this, it becomes necessary to determine, first, if in this type of judicial review a trial de novo is proper, and secondly, if it is not, what is the proper type of procedure.

## No Trial de Novo

█ Whether on the hearing of an order to show cause or on a hearing after answer filed, the petitioner asking for judicial review of the action of the medical board in refusing to restore a revoked medical license is not entitled to a trial de novo. The following cases (*McDonough* v. *Goodcell,* 13 Cal.2d 741 [91 P.2d 1035, 123 A.L.R. 1205] ; *McDonough* v. *Garrison,* 68 Cal.App.2d 318 [156 P.2d 983] ; *Hansen* v. *State Board of Equalization,* 43 Cal.App.2d 176 [110 P.2d 453] ; *San Diego Cotton Club* v. *State Board of Equalization,* 139 Cal. App. 655 [34 P.2d 749] ; *Glick* v. *Scudder;* 69 Cal.App.2d 717 [160 P.2d 90], have established the rule that the court in reviewing the action of a statewide administrative board under an application for issuance of a license is not entitled to grant a trial de novo, as is the rule in cases of revocation of license.

█ It is elementary that a person seeking restoration of a revoked license has no greater rights than a person seeking an original license. (*In re Nash,* 39 Cal.App. 548 [179 P. 897].)

The rule of *Laisne* v. *California St. Bd. of Optometry,* 19 Cal.2d 831 [123 P.2d 457] ; *Dare* v. *Board of Medical Examiners,* 21 Cal.2d 790 [136 P.2d 304] ; *Wyatt* v. *Cerf,* 64 Cal.

App.2d 732 [149 P.2d 309], concerning revocation of licenses, does not apply.

## Proper Procedure

■ While petitioner was not entitled to a trial de novo, he was entitled to a formal hearing on the record of the administrative board. The record was in court, brought and filed there pursuant to the demand in the order to show cause as authorized by section 1094.5 of the Code of Civil Procedure. ■ On the hearing of the order to show cause it was not necessary, as claimed by petitioner, that an answer to the petition be filed, in order for the court to determine the matters presented by the order. (*Brown* v. *Superior Court*, 70 Cal.App. 732 [234 P. 409].) ■ Under subdivision (c) of section 1094.5, the court is limited to a determination of whether the board's findings are "supported by substantial evidence in the light of the whole record." The court must then, if the record is present, on the hearing of the order to show cause, examine the record. This does not mean that the entire board record must necessarily be read in open court; but a fair and full opportunity must be given petitioner to point out in the record the matters that he claims show the arbitrary action of the board. The petitioner, however, is not entitled to offer evidence, nor submit to the court anything which was not before the board. If the board improperly excluded evidence, and the court, having in mind that the petitioner must affirmatively prove rehabilitation, determines that such evidence was necessary to a complete determination by the board of the application, then the case would have to be returned to the board to consider that evidence.

Section 1094.5 of the Code of Civil Procedure provides that in mandate proceedings of this character "[a]ll or part of the record of the proceedings before the inferior tribunal, corporation, board or officer may be filed with the petition, may be filed with the respondent's points and authorities or may be ordered to be filed by the court . . . (b) The inquiry in such a case shall extend to the questions whether the respondent has proceeded without, or in excess of jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. Abuse of discretion is established if the respondent has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence. (c) Where it is claimed that the findings are not supported

by the evidence, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, abuse of discretion is established if the court determines that the findings are not supported by the weight of the evidence; and in all other cases abuse of discretion is established if the court determines that the findings are not supported by substantial evidence in the light of the whole record.''

### Did Petitioner Receive a Fair Hearing?

An examination of the proceedings in the court below shows that petitioner did receive a fair hearing. There was an oral argument, at which petitioner was given an opportunity to, and did, present his objections to the court proceeding and his contentions as to the alleged abuse of discretion by the administrative board. Petitioner also presented to the court a ''Memorandum on Law Applicable to Petitioner's Case.'' Moreover, petitioner was permitted at the hearing, over the objection of the respondents, to file an affidavit by a person whom the board had refused to allow to testify concerning the alleged insanity of one of the witnesses against petitioner. The affidavit contained the testimony she would have given had the board permitted her to testify. Moreover, when the case was submitted for decision, the court allowed ''10 days to file points and authorities, affidavits and offer of proof.'' No limitation was placed on the amount or nature of the questions to be considered in the briefs. Petitioner submitted with his final points and authorities the affidavit of one Dr. Cerf, in support of his claim that the board, as to the first application, had considered certain newspaper clippings. As pointed out before, in this type of proceeding, evidence other than that received by the board cannot be considered. Yet, the petitioner had the benefit of such evidence here. Of course, the court should determine whether the board improperly refused to admit relative evidence offered. If it did, the court cannot receive such evidence in this type of proceeding, as there is no trial de novo, but must send the case back to the board with instructions to receive such evidence.

The memorandum opinion of the judge shows that he considered and passed upon all the points presented to him by petitioner in his oral argument and in his briefs, and that he studied the board's record in the light of the contentions made by petitioner.

Petitioner cannot now contend that he was denied an opportunity to question the sufficiency of the record before the board. At the time of the hearing, petitioner's main contention

was that he was entitled to a trial de novo. Although petitioner did not confine himself entirely to that contention, he is somewhat in the position of the petitioner in *Dare* v. *Board of Medical Examiners, supra* (21 Cal.2d 790, 794): "The petitioner may not now contend that he was not accorded the right to question the sufficiency of the record before the board, if it had been produced. . . . The record shows that the court offered him such an opportunity but he declined to so proceed on the ground that he was entitled to a trial anew without the introduction of the record before the board."

### *Were the Board's Findings Supported?*

■ This brings us to the merits of the proceeding. Both this and the trial court are limited to a determination of whether the board's findings are "supported by substantial evidence in the light of the whole record." (Code Civ. Proc., § 1094.5 (c).) If there was such substantial evidence the court has no power to set aside the judgment of the board even though such judgment was not supported by the weight of the evidence. (*McDonough* v. *Goodcell, supra* [13 Cal.2d 741].) ■ In determining this question, which requires an examination of all the testimony before the board, it is important to bear in mind that in a proceeding for the restoration of a revoked license, the burden at all times rests on the petitioner to prove that he has rehabilitated himself and is entitled to have his license restored, and not on the board to prove to the contrary.

"In a proceeding for reinstatement 'the burden of proof is upon the one who seeks, after disbarment, to accomplish a restoration to the ranks of the legal profession, and before the court may grant the petition for reinstatement it must be satisfied and fully convinced by positive evidence that the effort he has made toward rehabilitation of his character has been successful. (*In re Cate*, 77 Cal.App. 495 [247 P. 231]; *In re Nisbet*, 77 Cal.App. 260, 262 [246 P. 120].) It is only reasonable that the person seeking reinstatement, after disbarment, should be required to present stronger proof of his present honesty and integrity than one seeking admission for the first time whose character has never been in question. In other words, in an application for reinstatement, although treated by the court as a proceeding for admission, the proof presented must be sufficient to overcome the court's former adverse judgment of applicant's character.' [Citing cases.]" (*Maggart* v. *State Bar*, 29 Cal.2d 439, 443-4 [175 P.2d 505].)

" 'One who has been disbarred for acts involving a high degree of moral turpitude—and those committed by petitioner were of that character—"should not be reinstated in the ranks of the legal profession except upon the most clear and convincing, nay, we will say, upon overwhelming, proof of reform—proof which we could with confidence lay before the world in justification of a judgment again installing him in the profession . . ." ' [Citing cases.]" (*Wettlin* v. *State Bar*, 24 Cal.2d 862, 869 [151 P.2d 255].) It goes without saying that the same rule would apply to a person seeking reinstatement in the medical profession. As said in the Maggart case, *supra*, page 443, "[T]he only issues which may now be presented by [petitioner] concern his activities since his disbarment and his present moral qualifications, ability and learning . . ."

Assuming, but not deciding, that, as contended by petitioner, there was no showing contrary to the evidence produced by petitioner, and that the board erred in admitting and refusing to admit certain evidence, the record still fails to disclose that "clear and convincing . . . proof of reform" (*Wettlin* v. *State Bar, supra*), which petitioner undertook the burden of producing. The evidence which the board refused to admit was not in proof of petitioner's case, but to overcome certain evidence against petitioner, so its nonadmission does not affect this question.

In addition to a superior court certificate of rehabilitation, letters and testimony of a number of doctors, former patients and acquaintances of petitioner, were admitted to the effect that in their opinion petitioner was honest, conscientious, skillful, competent and ethical in his profession. All recommended his reinstatement. These witnesses, for the most part, showed a very limited knowledge of his activities and associates since his release from prison, their contacts being confined to infrequent meetings of a casual nature. We may assume that for the purposes of this opinion the showing was sufficient to establish petitioner's ability and learning in medicine, and the belief of these persons, from their limited contacts with him, that he was morally qualified. However, petitioner's own actions since his release from prison are the essential criterion to judge whether he has so rehabilitated himself as to compel his readmission to the medical profession. "While letters of recommendation are admissible in proceedings of this character, neither such letters nor the testimony

of witnesses as to the good character of petitioner, however numerous or laudatory, can overcome the direct and positive evidence as to petitioner's character.'' (*Wettlin* v. *State Bar, supra,* p. 869.)

Section 2376.5 of the Business and Professions Code provides that among other matters the board is to consider on a hearing of this kind are ''all activities of the petitioner since the disciplinary action was taken against him.'' Since his release in December, 1942, petitioner's activities have been definitely negative. According to his own testimony, he has had no employment of any kind. When asked, ''And how would you characterize your activities as far as business is concerned during this interval since you left San Quentin?'' he replied, ''I have been attending to my own business, if that is what you mean.'' He spent considerable time in the study of medicine, devoted himself primarily to taking care of his own financial affairs, such as mining interests, his father's estate and income tax adjustments, requiring trips away from San Francisco, to Texas, Los Angeles and Sacramento.

Considering petitioner's evidence as a whole, it would not appear to warrant or compel a determination that there was an abuse of discretion by the board in finding that he had not affirmatively shown rehabilitation. The recommendations in his favor were general in nature and presented no evidence of particular activities indicating a rehabilitation since his release from prison. A number of the authors were summoned as witnesses by the respondents and on cross-examination nearly all indicated that they did not base their recommendations on any relationship or knowledge of petitioner's conduct since the revocation of his license, tending affirmatively to show rehabilitation.

While petitioner lays stress upon the fact that he had obtained a superior court certificate of rehabilitation, that certificate in itself does not satisfy the burden resting on him, any more than proof of a pardon does. A pardon ''does not restore his character and cannot reinvest a person with those qualities which are absolutely essential for an attorney-at-law to possess or rehabilitate him in the trust and confidence of the court.'' (*In re Lavine,* 2 Cal.2d 324, at p. 329 [41 P.2d 161, 42 P.2d 311] ; to the same effect, *Wettlin* v. *State Bar, supra* [24 Cal.2d 862, 869].)

During the war period, when there was a tremendous shortage of manpower in war work, in industry, in business

and in all lines of endeavor, petitioner contented himself with looking after his own financial interests, in enjoying himself at his club and the race track. While, in view of the cloud over him, it may not have been advisable for him to engage in work allied to the practice of medicine, and even though unskilled in any other line, petitioner could have found employment, as did thousands of others of his age and lack of skill, in war or other work. There is no evidence that in any way petitioner contributed to the war effort. Other than employment, there were any number of volunteer agencies, such as War Chest, Salvation Army, Red Cross, and agencies of a commercial, educational, and charitable type, etc., that would have welcomed his services. While petitioner stated to the board that he desired his license restored so that he could offer his services as a physician to the armed forces, it was necessary for him first to demonstrate his real desire to help his country and to prove his own moral qualification to accept such a position by engaging in some work or voluntary service, while awaiting the time when his license might be restored to him.

Petitioner testified that since October, 1944, his mother was ill and that he cared for her. This might partially explain his inactivity. However, he stated that his personal affairs consumed "some times three or four hours a day" and he appears to have had time to "fool around," play cards, go to the beach and the races and make several trips requiring as long as three or four weeks on business involving his mining and other interests. Viewing the evidence in a light most favorable to petitioner, it would seem that, at most, it can only be said that since his release he has committed no further offenses and has been involved in no trouble. Rehabilitation would appear to require some positive action.

Contrast petitioner's life with that shown by the petitioner in *In re Andreani*, 14 Cal.2d 736 [97 P.2d 456]. ". . . upon occasion, throughout the past six years, he has accepted very humble employment, at modest wages—at times as low as $12 per week; . . . for a considerable portion of that period he has given largely of his services, gratuitously, to divers civic and public projects which had for their aim the solution of problems relating to 'unemployment relief' and other 'rehabilitation' programs." (P. 748.)

A man who has had his medical license revoked for the commission of a felony cannot stand idly by when his

country is in dire peril, contribute nothing in the way of services, and then successfully contend that he has so rehabilitated himself as to *compel* the restoration to him of his license. For this court to grant petitioner the relief sought, we must find from the record that as a matter of law the finding and decision of the board is without support in the evidence. (*Great Western Power Co. v. Pillsbury*, 170 Cal. 180 [149 P. 35].) The board is vested with discretion in determining the question presented to it. (*Dare v. Board of Medical Examiners, supra* [21 Cal.2d 790, 796].) "The petitioner is not entitled to the [issuance of an alternative] writ [of mandate] as a matter of right, but its issuance involves consideration of its effect in promoting justice." (*Sipper v. Urban*, 22 Cal. 2d 138 [137 P.2d 425].) In view of the completely negative type of activity followed by petitioner since his release, we cannot say that the board abused its discretion in refusing to restore his license.

We adopt the following language of the trial court: "While the Court looks with favor on the rehabilitation of an individual, and feels that one in Petitioner's status should be given every encouragement in effecting a rehabilitation and securing a reinstatement of his medical license, yet the burden is always on the Petitioner to show such a reformation and rehabilitation. It may be helpful to Petitioner, with an eye to the future, to point out that he must build a case of rehabilitation in a positive fashion. . . . His contacts and course of conduct should be such as to leave no doubt of his sincerity to again become a useful member of the medical profession. The Court does not feel that his past record and conviction of a felony should in and of itself bar him from securing a reinstatement of his license at some future time when he is able to make a fair and complete showing of rehabilitation."

The judgment and order appealed from are affirmed.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied April 10, 1948, and the following opinion was then rendered:

BY THE COURT.—In appellant's Petition For A Rehearing it is contended that the transcript of the hearing by the Board of petitioner's application for reinstatement is not properly before this court. In respondents' Petition For A Rehearing And Petition For Augmentation Of The Record Pursuant

To Rules on Appeal, filed November 12, 1947, the respondents requested permission to file such transcript, and such permission was granted by the order of this court, dated November 26, 1947: "The petition to augment the record is granted." The reporter's transcript of the proceedings before the board is properly authenticated by the reporter. While this record does not bear the filing marks of either this court or the trial court, appellant, by expressly requesting in his Reply Brief To Respondents' Argument On Rehearing, filed January 9, 1948, that this court examine such record and pass upon the questions raised by him, which could only be determined by an examination thereof, has waived any informality in the presentation of the record to this court.

Appellant's petition for a hearing by the Supreme Court was denied May 6, 1948. Carter, J., and Schauer, J., voted for a hearing.