Filed 5/10/22  Shah v. Dental Bd. of Cal. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SHAILESH SHAH, | C093420 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2020-80003299-CU-WM-GDS) |
| v. | |
| DENTAL BOARD OF CALIFORNIA, | |
| Defendant and Respondent. | |

Shailesh Shah appeals from a judgment denying his petition for a writ of mandate. Shah petitioned for writ relief to overturn a decision by the Dental Board of California (Board) denying him reinstatement of his license to practice dentistry.  The Board revoked his license after he sexually battered two female patients in his dental chair while he was on probation for an earlier sexual battery of a female patient.  Shah sought reinstatement of his license in 2013 and again in 2017.  The Board denied reinstatement both times, and this proceeding arises out of the second denial of Shah's petition for reinstatement.

1

In this appeal, Shah contends (1) the Board "committed an impermissible due process violation by exceeding the statutory framework for rehabilitation and reinstatement criteria," (2) the Board violated due process by holding Shah to "an unreasonable and improper evidentiary standard," (3) in denying reinstatement, the Board mischaracterized the evidence in the record, (4) the trial court erred "by resting cause for discipline on findings not articulated in the decision" of the Board, and (5) "repeated procedural errors permeated the proceeding."

We conclude that Shah's briefing precludes resolution of the merits of several of his contentions. Despite his repeated assertions of due process violations, he offers no analysis of due process or citation to authority for his due process arguments. Shah's challenge to the Board's evidentiary findings has not been preserved for appeal, and his challenge to the trial court's findings lack merit. We reject Shah's assertion of repeated procedural errors in the proceedings below for deficient briefing that does not show how he might have lodged timely objections or how he was prejudiced. Accordingly, we affirm.

## BACKGROUND

In setting forth the factual and procedural history of this case, we note that the trial court expressly found that Shah did not challenge the factual findings made by the Board in his current petition for reinstatement of his license. Accordingly, the following recitation of facts draws on the Board's express findings.

### *Shah's Sexual Battery of Three of His Patients*

Shah received a license to practice dentistry in 1990. While Shah had a license to practice dentistry, he committed sexual battery against three of his patients: R.M., P.C., and E.H.

### *1. Sexual Battery of Patient R.M.*

Shah's first sexual battery of a patient occurred as follows: "On July 5, 1996, female patient R.M. went to see [Shah] because she was in pain and his dental office was

2

nearby. R.M. arrived at [Shah's] offices at approximately 4:00 p.m. [¶] [Shah] conducted a dental examination of patient R.M., followed by a tooth extraction procedure and suture. The procedure was completed and patient R.M. began to walk out of the examination room. However, [Shah] asked patient R.M. to come back to the examination room stating that he wanted to check her gauze for bleeding. Patient R.M. walked back to the examination room and heard [Shah] tell two female employees that they could go home. The two female employees left the office and, as a result, [Shah] was the only dental staff member in the office. [¶] Patient R.M. sat down on the dentist chair and [Shah] sat down to the right of her, adjacent to her right arm. [Shah] began to rub her right arm from her shoulder to below her elbow. As he rubbed her right arm, the back of his hand touched the right side of her right breast. As [Shah] moved his hand downward from patient R.M.'s right shoulder, he applied pressure forcing her arm against his groin. Patient R.M. stiffened her arm and [Shah] moved forward rubbing his groin area against her arm. [¶] [Shah] then began to check patient R.M.'s mouth with his hands but moved his hands downward toward her breasts. [Shah] caressed patient R.M's breasts and kissed her mouth. Patient R.M. was terrified of what was going on and began to tell [Shah] 'Please stop, Don't. Please don't.' [Shah] told patient R.M. 'Shh. It's OK, You're going to be OK.' After [Shah] finished checking her mouth, he told patient R.M. that she needed to come back to have the stitches removed and prescribed some medication. Patient R.M. left the dental office at approximately 5:00 p.m., distraught and not knowing what to do."

In February 1997, Shah pleaded guilty to and was convicted of sexual battery in violation of Penal Code section 243.4, subdivision (a). He was placed on summary probation for 36 months and ordered to perform community service. In July 1997, the Board brought an accusation against Shah that sought to revoke his license. The administrative law judge who conducted the original hearing on the accusation arising out of patient R.M. found that Shah's "testimony was emotional. He cried often. He

3

expressed remorse for his conduct, and the tears were a testament to his sincerity.  He apologized for his conduct.  He accepted full responsibility for his conduct and did not try to explain it or blame anyone else.  He did not try to minimize the seriousness of his misconduct.  He accepted the civil and criminal consequences, and is willing to accept the administrative consequences as well.  His promise he will never again do anything like what he did to R.M. was accompanied by tears and had the feel of someone who would honor that promise."

The Board adopted the administrative law judge's proposed decision to revoke Shah's license, stay the revocation, and place him on probation for seven years.  Among the terms and conditions imposed by the Board were requirements that he have a chaperone in the room when treating female patients and that he notify all patients of his inability to treat female patients without a third party in the room.

## 2. Sexual Battery of Patient P.C.

While on probation, Shah committed two more sexual batteries on his patients.  The second victim was P.C.  "On or about August or September of 2001, patient P.C. was treated by [Shah] for the first time.  [Shah's] dental assistant was in the treatment room for a portion of P.C.' s examination, but she was not present the entire time.  When [Shah's] assistant left the treatment room, [Shah] rested his forearm on P.C.'s breasts and moved his arm around as if massaging her breasts.  As soon as the dental assistant re-entered the room, he removed his arm from her breasts.  [¶]  The evening of her dental examination, [Shah] called P.C. at home.  He told her to return to his office because he needed to re-check something.  P.C. and her daughter returned to [Shah's] office at approximately 7:10 p.m.  [Shah] met them in the parking lot.  They walked with him to the front door and [Shah] unlocked the office door.  There were no other patients or staff working at the time.  [¶]  [Shah] took P.C. and her daughter into a treatment room.  He briefly looked in the daughter's mouth then sent her to the waiting room to watch TV.  When P.C. was alone with [Shah] and she was sitting in the dental chair, [Shah]

4

massaged her cheeks and then rested his arm on her breasts. He pushed down so hard on her breasts that it was painful. She did not report this incident to the police until January 28, 2002."

### 3. *Sexual Battery of Patient E.H.*

Shah's third victim was his patient, E.H.

"On or about November 20, 2001, patient E.H. was treated by [Shah] for the first time. After examining her, [Shah] told E.H. she might require a root canal. She left his office and returned home.

"Around 6:00 p.m. the same evening, [Shah] telephoned E.H. and told her to return to his office that same night to be re-checked. E.H., accompanied by her husband and her nursing infant, drove back to [Shah's] office. No dental staff personnel other than [Shah] were present in the dental office. E.H. was taken into a treatment room while her husband and baby waited in the lobby.

"After E.H. sat in the dental chair, [Shah] put his finger into her mouth and massaged her tongue. He told her to relax, and then he began to rub the side of her face and neck. Soon thereafter, [Shah] began drilling inside of her mouth. As he used the drill, he pushed against her breasts with his forearm. E.H. felt trapped and could not move. [Shah] rolled his forearm over and around her breasts. E.H. was nursing and the pressure of [Shah's] arm on her breasts made her breasts express milk. E.H. felt [Shah] rubbing his groin area against her shoulder. She could feel his erect penis pressing against her shoulder, but she could not move because he was drilling inside of her mouth.

"When [Shah] stopped drilling, he put his finger into her mouth and told her to bite down. Then he asked her, 'Does that feel good?' At this point E.H. heard her baby crying and told [Shah] she had to leave. [Shah] told her, 'one minute I'm almost done.' [Shah] pressed down on her breast again which caused her pain and caused breast milk to be expressed through her shirt.

"As [Shah] pressed against E.H.'s chest he pulled her right arm from her lap and moved it so it hung off the side of the chair. As her arm hung off the side of the chair, [Shah] positioned her arm between his legs. E.H. felt [Shah's] erect penis through his pants.

"[Shah] rubbed himself up and down against her arm. E.H. felt trapped and pinned down by [Shah]. When [Shah] stopped, he inserted his finger back into her mouth and started to massage her tongue with his index finger. E.H. felt confused and upset.

"[Shah's] sexual battery of E.H. lasted for about five minutes. Every time she told him she had to leave, he told her he was almost finished. Finally, she told him she had to go and got up. [Shah] told her, 'I'll call you later.' After she left the dental office, E.H. told her husband what happened, but they did not know what to do. When they arrived home, [Shah] called E.H. twice, but her husband told him she could not talk.

"E.H. had an appointment to return to [Shah's] office the next day to complete the dental work. She was reluctant to return, but felt her options were limited. She was in pain from the initial work and did not have the money to seek private care. She thought she would be safe during normal business hours.

"E.H. returned to the dental office the following day. [Shah] attended to her appropriately while his dental assistant was in the room. Once the examination started, [Shah] directed the assistant to check on another patient. After the assistant left the room, [Shah] stuck his finger in E.H.'s mouth and started rubbing her tongue. When the dental assistant returned, [Shah] went back to work. When the dental assistant left the second time, [Shah] began rubbing E.H.'s neck and then put his hand down the front of her shirt stopping just short of her breasts. [Shah] asked E.H., 'Do you like that?' E.H. got up and left the office. When she got home, her husband told her [Shah] had called twice to speak to her."

6

### Revocation of Shah's License

In August 2002, the Board filed an accusation to revoke Shah's license based on his sexual misconduct with patients P.C. and E.H. At the time that the Board filed the accusation, Shah also had criminal charges pending against him for the same misconduct. Shah stipulated to the surrender of his license in May 2006. In his stipulation, Shah admitted the truth of every fact in the accusation and agreed that if he ever sought a petition for reinstatement of his license "all of the charges and allegations" in the revocation petition would be deemed true. Shah surrendered his license to practice dentistry as a condition of criminal probation.

### 2013 Petition for Reinstatement

In October 2013, Shah petitioned the Board for reinstatement of his dentistry license. After a hearing, the administrative law judge issued a proposed decision granting Shah reinstatement of his license by placing him on probation for a term of five years with terms and conditions. In August 2014, the Board declined to adopt the proposed decision and issued its own decision. The Board's decision rejected the petition for reinstatement. In response, Shah sought writ relief in the superior court. The superior court granted Shah's writ petition and remanded the matter to the Board for further findings. The Board reconsidered the matter but again denied reinstating Shah's license.

### 2017 Petition for Reinstatement

In July 2017, Shah filed a second petition for reinstatement of his license. Board investigator Caroline Montgomery conducted an investigation and prepared an investigative report. Shah submitted his own evidence to the Board, including his own testimony, testimony by character witnesses, and the testimony of his expert witness, William Nelson, Ph.D. Nelson, a licensed clinical psychologist, evaluated Shah at Shah's request. Nelson met with Shah twice and administered several psychological tests. On this basis, Nelson "concluded that [Shah] does not have a clinical diagnosis *at this time* the only diagnosis that appears appropriate *at this time* is Paraphilia in remission. This

7

indicates that while he met criteria for Paraphilia in the past, there are currently no or symptoms which would indicate he is prone to Paraphilia impulses or acting out *at this time*." (Italics added, fn. omitted.)

In April 2019, the administrative law judge issued a proposed decision granting Shah reinstatement of his license by placing him on probation with various terms and conditions. The Board declined to adopt the proposed decision and heard the matter for itself. Making its own factual findings, the Board's decision denied Shah's petition for reinstatement of his dentistry license. The Board recounted the circumstances of Shah's three sexual batteries, surveyed his evidence, and concluded that he had not met his burden to show his rehabilitation by clear and convincing evidence.

In its decision, the Board expressed concern over the circumstances of the original misconduct in which Shah had sexually battered two of his patients while he was on probation with "strict conditions." Shah did not receive psychological treatment after his first sexual battery and did not disclose being sexually molested as a child until 2005. The Board noted that Nelson met with Shah only twice and that "his recommendations are expressly limited to results of psychological testing that provide for a lack of current diagnoses, not how [Shah] will react to future women in his dental chair or whether his Paraphilia could again become active." The Board further found that Shah's "testimony at [the] hearing was also troubling in terms of accepting responsibility" because his explanation for his conduct did not mesh with the predatory nature of his misconduct. Noting its mission to ensure that California dentists practice safely, the Board denied Shah reinstatement of his license.

In January 2020, Shah filed a "petition for writ of administrative mandamus" in superior court.[1]  After a hearing, the trial court denied Shah's petition for writ relief.  The trial court found that Shah had not challenged the Board's factual findings, but seemed to contest only the Board's conclusions of law.  The trial court reviewed the Board's decision and determined that the Board had not abused its discretion in determining that Shah had not met his burden to demonstrate his rehabilitation.  From the judgment, Shah timely filed a notice of appeal.

## DISCUSSION

### I
### *Due Process Relating to the Board's Weighing of the Evidence*

In his first argument heading, Shah asserts that the Board "committed an impermissible *due process* violation by exceeding the statutory framework for rehabilitation and reinstatement criteria in petitions for reinstatement."  (Italics added.)  Singh does not identify whether his due process argument relates to procedural due process or substantive due process.  He also does not state whether his due process argument arises out of federal or California constitutional due process guarantees.

We cannot determine the contours of his due process argument because – with one exception – none of his cited authorities even mentions due process.  The exception is Shah's single citation – without any discussion – to *Jacobs v. Board of Dental Examiners* (1922) 189 Cal. 709.  We cannot discern how *Jacobs* supports Shah's due process argument because the *Jacobs* court summarily dismissed the assertion that the Board has no power to revoke or suspend the license of a dentist for unprofessional conduct.  (*Id.* at pp. 711-712.)  Shah does not contest the power of the Board to suspend a license.  For

---

[1]    Although captioned a petition for writ of administrative mandate, Shah's petition indicated that it was actually for traditional mandate under Code of Civil Procedure section 1085.  (See *Schwartz v. Poizner* (2010) 187 Cal.App.4th 592, 598.)  His request for administrative mandate relief was listed only as an alternate ground.

9

failure to offer any legal authority that can support his due process assertion, we deem the argument forfeited. "To demonstrate error, appellant must present meaningful legal analysis supported by citations to authority and citations to facts in the record that support the claim of error." (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.)

Instead of developing a due process argument, Shah appears to argue that the Board abused its discretion by failing to accept his evidence of rehabilitation. We reject this argument for two reasons. First, "[w]hen a potential issue or argument is not presented to an appellate court in a separate heading or subheading, that issue or argument is deemed forfeited." (*Phillips v. Honeywell Internat. Inc*. (2017) 9 Cal.App.5th 1061, 1077 [collecting authority].) Second, Shah essentially asks us to reweigh the evidence by giving credit to his evidence while ignoring the evidence in support of the Board's denial. We do not reweigh the evidence presented to the Board.

As this court has previously explained, "[w]e ' "do not reweigh the evidence; we indulge all presumptions and resolve all conflicts in favor of the [agency's] decision. Its findings come before us 'with a strong presumption as to their correctness and regularity.' [Citation.]" ' (*California Youth Authority v. State Personnel Bd*. (2002) 104 Cal.App.4th 575, 584.) When more than one inference can be reasonably deduced from the facts, we cannot substitute our own deductions for that of the agency. (*SP Star Enterprises, Inc. v. City of Los Angeles* [(2009) 173 Cal.App.4th 459,] 469.) We may reverse an agency's decision only if, based on the evidence before it, a reasonable person could not have reached such decision." (*Donley v. Davi* (2009) 180 Cal.App.4th 447, 456.)

Here, the Board's decision is reasonable given its evaluation of the evidence. The Board was not persuaded by Shah's expert whose evaluation and recommendations were "expressly limited to results of psychological testing that provide for a lack of current diagnoses, not how [Shah] will react to future women in his dental chair or whether his Paraphilia could again become active." The Board was troubled by Shah's testimony in

terms of accepting responsibility – noting the disconnect between his explanation for his sexual batteries and the predatory nature of his sexual acts. And, the Board noted that Shah's subsequent two sexual batteries occurred after he admitted his first offense and expressed contrition. The Board determined the evidence presented by Shah did not overcome his burden of proof. We decline to reweigh this evidence.

Finally, Shah's argument heading asserts that the Board exceeded its "statutory framework," but he does not develop the assertion. Shah's argument does not identify what evidence the Board considered for which it lacked statutory authority to consider. We disregard this undeveloped argument. (*In re S.C., supra,* 138 Cal.App.4th at p. 408.)

## II
### *Due Process Argument Relating to the Board's Evidentiary Standard*

Next, Shah asserts that the Board "impermissibly held [him] to an unreasonable and improper evidentiary standard *contrary to due process*." (Italics added.) As with his previous due process claim, Shah offers no citations to any authority that even mentions due process. Moreover, Shah does not explain *how* the Board violated his due process rights – whether they be procedural or substantive. As with the prior argument, the contention is forfeited for failure to cite authority in support of the proposition he appears to seek to advance. (*In re S.C., supra,* 138 Cal.App.4th at p. 408.)

Moreover, Shah accepts that he had the burden of proof to establish by clear and convincing evidence that he was entitled to reinstatement of his dental license. This is the same standard as articulated in the Board's decision that "[a] person seeking reinstatement . . . must show by the most clear and convincing evidence that efforts made towards rehabilitation have been successful and that he is no longer deserving of the adverse character judgment associated with the discipline imposed against his license."

Shah's argument appears to be centered on his assertion that he can never satisfy the Board's demands for a successful showing of rehabilitation. For example, he complains that he cannot establish that he has safely treated patients in the dental chair

11

since his license revocation because he cannot do so until his license is reinstated. Careful examination of the Board's decision shows that the Board did not say or imply that Shah can never make a sufficient showing of rehabilitation.

Based on our examination of the Board's decision, we reject Shah's assertion that the Board put Shah into the impossible position of showing his ability to regain the right to practice dentistry only by practicing dentistry. The portions of the Board's decision on which Shah relies do not support this assertion. Instead, the Board explained that Shah's expert met with Shah only twice and based his testimony on evaluations that were limited to the lack of a current diagnosis and did not show how Shah will behave in the future. The Board also found Shah's testimony incongruous in claiming that he believed his victims were "soliciting or even encouraging his conduct" while displaying predatory behavior and persisting after his victims asked him to stop. Combined with Shah's repeated sexual batteries while on probation, the Board concluded that Shah had not met his burden to show by clear and convincing evidence that he was rehabilitated. In sum, Shah has not persuaded us that the Board departed from its correct articulation of the evidentiary standard in denying his petition for reinstatement of his dental license.

### III
### *Mischaracterization of Evidence by the Board*

Next, Shah argues that the Board "committed a prejudicial error by mischaracterizing evidence in order to support an otherwise erroneous decision." Specifically, Shah asserts that the Board "failed to accurately note the evidence and [that its decision] lacked underlying support." This argument has not been preserved for appeal.

In denying Shah's writ petition, the trial court deemed true every factual finding *made by the Board*.[2]  In doing so, the trial court explained that "Shah does not identify which factual findings and legal conclusions he challenges.  It appears, however, that he does not challenged [*sic*] *any* of the factual findings.  He quotes from, and criticizes, legal conclusions 6, 10, 11, and 13, and the Court thus assumes those are the only conclusions he challenges.  More generally, his argument is that the factual findings do not support the Board's ultimate conclusion that he failed to prove rehabilitation by clear and convincing evidence."

On appeal, Shah does not allege the trial court erred in determining that he did not challenge "any of the factual findings" of the Board.  Without acknowledging the trial court's determination that he forfeited any evidentiary challenge, Shah attempts to challenge the Board's factual findings for the first time on appeal.  Yet, it is well settled that "[m]atters not raised in the trial court will not be considered for the first time on appeal."  (*Crawford v. JPMorgan Chase Bank, N.A.* (2015) 242 Cal.App.4th 1265, 1274.)  Accordingly, we conclude that Shah has not preserved this argument for appeal.

## IV
### *The Trial Court's Factual Findings*

Next, Shah argues that the trial court's statement of decision made new factual findings not previously made by the Board in order to "cure" deficiencies in the Board's decision.  In support of this argument, Shah makes three assertions:  (1) that the trial court made the same mistake as the Board in requiring Shah to prove that he could regain the right to practice dentistry only by practicing dentistry, (2) the trial court "provided its own conclusions" about weaknesses in the evidence of "community support" introduced

---

[2]     In contrast to Shah's challenge to *the Board's* factual findings in this argument, we consider Shah's challenge to *the trial court's* factual findings in the next section, part IV, *post*.

by Shah, and (3) the trial court engaged in "its own speculation" about the psychological tests administered by Shah's expert witness, Nelson. We are not persuaded.

## A.
### *Whether Shah Had to Show Safe Practice Before He Could Practice*

Shah asserts that the trial court erroneously concluded that he had to demonstrate that he could safely *return* to dentistry only by first safely practicing dentistry. Shah misreads the trial court's statement of decision. In pertinent part, the trial court explained:

"[Shah] committed sexual battery on patients while he was performing dental procedures, and it was the very fact that he was licensed to practice dentistry that allowed him to commit these acts. Shah has thus not had an opportunity to reoffend since he stopped practicing. Given this, it is not unreasonable for the Board to require *some evidence that Shah will not reoffend* if he is once again allowed to treat patients. Indeed, this is not that different than the line of cases . . . *requiring evidence of good behavior during unsupervised time periods*. Shah complains that the Board is putting him in an impossible situation: he cannot get his license back without showing he can safely treat patients, but he cannot treat patients without a license. Be that as it may, the mere fact that Shah has not reoffended since he stopped practicing is not clear and convincing evidence that he is rehabilitated and will not sexually batter patients if his license is reinstated." (Italics added.)

The trial court correctly placed the burden on Shah to show that he would not reoffend. " ' "One who has been disbarred for acts involving a high degree of moral turpitude -- and those committed by petitioner were of that character -- 'should not be reinstated in the ranks of the legal profession except upon the most clear and convincing, nay, we will say, upon overwhelming, proof of reform -- proof which we could with confidence lay before the world in justification of a judgment again installing him in the profession . . .' " [Citing cases.]' (*Wettlin v. State Bar* [(1944)] 24 Cal.2d 862, 869.) It

14

goes without saying that the same rule would apply to a person seeking reinstatement in the medical profession." (*Housman v. Board of Medical Examiners* (1948) 84 Cal.App.2d 308, 316 (*Housman*).)

The trial court's decision did not place on Shah the impossible task of showing he safely practiced postrevocation dentistry in order to practice postrevocation dentistry. Instead, the trial court recognized that it was reasonable for the Board to require "some evidence that Shah will not reoffend" and that the evidence meet the standard of proof. The trial court recognized that Shah erroneously assumed that his failure to reoffend since his revocation automatically entitles him a reinstatement of his license. (*Housman, supra,* 84 Cal.App.2d at p. 316.) The trial court did not err.

**B.**
### *Whether the Trial Court Improperly Minimized Shah's Evidence*

Shah portrays the letters of support received from the community as proof of rehabilitation. The trial court reviewed all of his letters and explained the weakness of Shah's evidence: "Presumably Shah's point is that he did not molest any of his female employees, and this demonstrates he will not molest patients if he gets his license back. He acknowledged, however, that he has no statements or letters from any of these female employees, which tends to lessen the persuasiveness of this evidence."

The trial court further explained additional shortcomings with Shah's assertion of community support: "Shah argues that he has restored his reputation among those who know him best. As the Board found, he submitted letters of recommendation from friends and acquaintances who describe him as a caring, compassionate, kind, and considerate man who is active in his temple. The Court has reviewed all of these letters. Few mention his underlying conviction or the reason he lost his license." On this point, the trial court pointedly noted: "Shah was asked at the hearing whether he told all of the letter writers exactly why he was disciplined in the first place, and he responded, 'I didn't volunteer information . . . unless they asked me for it.' "

15

The trial court's review was thorough and supports the conclusion that Shah's community support did not constitute clear and convincing evidence of his ability to safely practice dentistry. In reviewing the record of community support *offered by Shah*, the trial court did not exceed the scope of its review of the propriety of the Board's decision. (*Flanzer v. Board of Dental Examiners* (1990) 220 Cal.App.3d 1392, 1396 (*Flanzer*).) There was no error.

## C.
### *Review of Nelson's Testimony*

Underlying Shah's arguments are the assumption that the Board and the trial court were bound to accept the testimony and conclusions of his expert witness, Nelson. In Shah's view, the trial court's review of the evidence provided by Nelson constituted "speculation" that exceeded the testimony given. In contrast to the trial court's detailed review, Shah's trial court briefing "cite[d], but barely discuss[ed], Dr. Nelson's report and his testimony at the hearing." We cannot fault the trial court for engaging in the analysis that Shah did not provide. (*Flanzer, supra,* 220 Cal.App.3d at p. 1396.)

The trial court examined the number and nature of psychological tests administered by Nelson. The trial court noted that tests for depression/anxiety or neurological damage did not seem to relate to rehabilitation. Even less clear was how an inkblot test had anything to do with the question of whether Shah would reoffend. The trial court also observed that Nelson's testimony seemed to be that " '[i]t's *assumed* to be gone.' So, as the Court understands Dr. Nelson's opinion, if Shah refrains from rubbing against a non-consenting patient for sexual gratification for a five year period, he is cured and unlikely to reoffend." (Italics added.) In support of its findings, the trial court quoted Nelson's own written conclusion that " '[t]he *most perplexing question, and most disturbing* when considering the reinstatement of his license is why he reoffended twice following his first conviction and Board discipline. His explanation is that he had not had the appropriate therapy at that time, specifically that he had not addressed his own

16

molestation as a child.  This is quite *plausible*.  He has *apparently* now completed that with Dr. Offenstein.  Mr. Shah has also attended Sex Anonymous groups for approximately two to three years.' "  (Italics added.)  The trial court found that this conclusion is "hardly clear and convincing evidence that he will not" reoffend.  We are satisfied that the trial court carefully and properly reviewed the expert witness's testimony and properly concluded that the Board had not abused its discretion in rejecting it as clear and convincing evidence of rehabilitation.

## V
### *Procedural Errors*

Finally, Shah presents another due process argument by asserting that "repeated procedural errors permeated the proceeding to [his] detriment . . . ."  As in the trial court, Shah's assertion of procedural errors is illustrated only by his reference to a late-produced investigative report during the administrative review process.  We conclude that Shah's argument has not been preserved for appeal.

Already in the trial court, the question of prejudice arose in relation to the investigative report.  The trial court found as follows:  "Shah fails to identify any such discovery request in the administrative record, and he has not proffered such a request to the Court.  He thus fails to demonstrate that he actually made a discovery request or that the Board violated section 11507.6.  [¶]  Moreover, even if the Court assumes for the sake of argument that Shah did make a discovery request, it is unclear that he was prejudiced by the failure to receive a copy of the investigative report prior to the hearing.  The [administrative law judge] asked Shah's counsel what relief she would like if the investigative report was requested but not produced.  Counsel responded that although a continuance might normally be appropriate in such a situation, Shah did not want a continuance 'under any circumstances.  He's waited very long for this hearing, and the idea that it be continued . . . is just something that we are not prepared to agree to.'  Shah thus cannot be heard to complain about the lack of a continuance.  Shah's counsel also

17

suggested that exclusion of the report 'should be considered.'  After briefly reviewing the report, the [administrative law judge] noted it did not appear there was anything in it that would not already be known to Shah, but she acknowledged 'that remains to be seen.'  The [administrative law judge] then recommended marking the report for identification, allowing the investigator to testify, 'and if you want to make some request at that point in regard to it, I'll entertain requests.'  When the report was ultimately proffered into evidence, Shah's counsel objected to hearsay statements contained therein, and the [administrative law judge] admitted them as administrative hearsay.  Shah never suggests the [administrative law judge] erred in admitting the report, and he points to no prejudice caused by the fact he did not receive it until the day of the hearing.  Indeed, he does not challenge any findings that were based on the report, and, in fact, it does not appear to the Court that the report played any role in the Board's ultimate decision.  Shah thus fails to convince that the Board's failure to produce the investigative report until the day of the hearing justifies granting the petition."  (Fns. omitted.)

To show that he has preserved this argument for appeal, Shah needs to demonstrate that (1) the trial court erred in finding that Shah never showed he actually made a discovery request for the investigative report, (2) that he asked for some sort of relief for the late report – especially since he appears to have waived any request for a continuance, (3) that he objected to the admission of the investigative report into evidence.  (See Evid. Code, § 353, subd. (a) [providing that a judgment may not be reversed based on erroneous admission of evidence unless "[t]here appears of record an objection to or a motion to exclude or to strike the evidence that was timely made and so stated as to make clear the specific ground of the objection or motion"].)  Shah's opening brief does not provide us with any record citation to show where he made a discovery request, where he might have asked for some sort of relief for the late production of the report, or where he objected to the admission of the report.  For lack of adequate record

18

citation, Shah has not demonstrated that he has preserved the issue for appeal. (*In re S.C., supra,* 138 Cal.App.4th at p. 408.)

Moreover, Shah's opening brief foregoes any explanation of prejudice arising from the admission of the investigative report. For example, he does not mention any of the findings in the report that he perceives might have made any difference in the outcome of the proceedings. However, "[u]nder well-established principles of California's constitutional doctrine of reversible error, . . . appellant must affirmatively demonstrate prejudicial error." (*Herrera v. Doctors Medical Center of Modesto, Inc.* (2021) 67 Cal.App.5th 538, 546.) In the absence of a showing of prejudice, Shah's argument cannot succeed.

## DISPOSITION

The judgment is affirmed. The Board shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


      /s/                     

      HOCH, J.


We concur:


 /s/                  

ROBIE, Acting P. J.


 /s/                  

RENNER, J.

19